The plaintiff, an employee of the defendant, brought this action to recover damages for personal injuries, alleging that the defendant failed to furnish him a reasonably safe place to work, that the machinery of the defendant was defective, that the defendant failed to inspect it, and failed to instruct and warn him. The defendant denied that it was negligent; alleged that if the plaintiff was injured by the negligence of any one, it was by the negligence of a fellow-servant; that if the defendant was negligent, this negligence was not the cause of the injury; that the injury was the result of an accident, and that the plaintiff (476) assumed the risk thereof. The defendant appeals from a judgment in favor of the plaintiff.
There was evidence on the part of the plaintiff tending to show that in March, 1908, and for six months prior thereto, plaintiff was employed by defendant to work in its dye-house, and among other things it was his duty to pack lint cotton into packing-rooms connected with said house, as the same was blown from the dyeing-rooms into the packing-rooms by means of a fan. These packing or storing rooms were about 7 feet wide, 14 to 16 feet long and 14 feet or more in height. The bleached for dyed cotton was blown in the top of the room, and the doors of the packing-rooms were kept closed. Formerly, cotton had been put into these rooms by hand. It was carried by hand into each room through the door. After the fan was installed, it became necessary to close the door of each room, in order to prevent the draft blowing the cotton out. Under the old system, the doors were bolted from the outside, and after the fan was installed no change was made in this particular and no other *Page 377 
doors were added. The plaintiff and others assigned to work in the packing-room entered the door, which was then closed and bolted by some of the employees on the outside. The packer remained in the room packing the cotton until the room was filled. He then knocked or kicked against the wall of the room, scratched a hole through the cotton, and was let out the door by some operative. This was the rule and custom of the defendant.
On the morning of the plaintiff's injury he was assigned to work in the packing-room. The cotton which was first blown in had been taken from the drying-rooms the evening before and had cooled. After this had been blown in, the defendant commenced blowing in warm cotton, which was removed from the drying-rooms that morning. At that time the cotton had been packed to a depth of 4 1/2 feet. Plaintiff, following the usual custom, had cotton over his eyes and nose to keep out the dust, and was on his knees, rolling the cotton back, when he heard an unusual sound about him. At once he discovered the cotton in the room was afire, and the blaze had flashed over him. He endeavored to get to the door. It was bolted from the outside; he called for help. In (477) order to protect them he closed his eyes, and endeavored to reach the door, which was the only exit. The cotton was 4 or 4 1/2 feet high, and piled against the door. The fire was all over the room. No one opened the door or answered his call for assistance. Being almost strangled by the fire, he ran against the door with his head and hands and burst it open by forcing out the staple which held it on the outside. That the bearings had before become heated on account of defective construction, want of repair, and failure to inspect; that defendant failed to warn and caution against danger; that the fan in operation at the time of plaintiff's injury was bolted to 2-inch flooring, the floor was unsteady, and would shake; that this jarring or shaking of the bolts and taps would cause them to become loose; that the bearings of the fan were usually covered with lint cotton; that the fan used was known as "The Buffalo Forge Company's" make. A cut of the same was introduced in evidence, and, among other things, showed two oil cups on the bearings of the fan for the purpose of oiling them. These cups were in plain view, and when kept on the fan disclosed the absence or presence of oil. When the oil cups were used, they served as a gauge by which those operating the machine knew when more oil was needed. There was evidence tending to show that one of the oil cups, at the time of the injury and prior thereto, for months had been off the fan, and the other one so broken or worn down that it would not retain oil; that instead of placing oil in the cups, the machinery was oiled through the holes leading into the bearings. The oil would waste on the floor and there was no gauge; that in the defendant's mill was another fan bolted *Page 378 
on a concrete foundation. This eliminated or lessened the vibration. That the fan to which plaintiff attributed his injury rattled and was not firmly placed; that the sparks seen at the time of the injury were near the ends of the bearings.
The defendant offered evidence tending to prove that the plaintiff was employed, among other things, to pack cotton in the storage-rooms; that the cotton was not delivered in the said room while hot; that there (478) was no such friction in the fans or pipes as to cause ignition; that the fan and machinery were not defective or out of repair or antiquated, but were such as are approved and in general use; that the fan was bolted firmly to a 2-inch floor, and that while there was a vibration which caused the pipe to rattle, it was only such as is common to fans similarly secured, and that this fan was secured in the customary manner; that the method of delivering cotton used by the defendant has been universally adopted and is considered safe and prudent by the cotton mills of the country.
That the defendant was not guilty of negligence in adopting the modern method of transferring cotton from one room to another, which has been generally adopted. That the only precaution which the defendant could have taken was to altogether discontinue this mode of transferring cotton and return to the old mode of moving it by hand, or to provide a door with a latch inside; that as the door in this instance proved no obstruction, no injury was suffered by reason of its being fastened on the outside; that if there had been a latch on the inside, it would have been impossible for the plaintiff to have found it, because, surrounded by fire in the air and every where, he could not look for it and the latch would have been hid by the cotton; that the fan and machinery were in good condition and in good running order at the time of the accident; that the bearings of the fan were at that time well oiled; that the oil cups to the fan were there; but if, as contended by the plaintiff, they had been removed, the holes from which the oil cups were taken were efficiently used in oiling the bearings; that the oil chambers were large enough to hold oil for lubrication many days, but that it was the rule and practice to fill them every morning; that the bearings of the fan were not heated at the time of the accident, but that if they were, it was caused by the negligence of a fellow-servant, whose duty it was to lubricate every morning when the fan was started; that the bearings were not loose or out of order and never had been, but if they were so at the time of the accident, it was through the negligence of a fellow-servant, whose (479) duty it was to keep the same in order or to report it to the machinist, who was charged with the operation of the fan; that if the machinist neglected to tighten the nuts and bolts and the bearings which may have become loose in the operation of the machine, or to oil *Page 379 
the bearings so as to prevent friction and sparks and fire, he was but a fellow-servant with the plaintiff, and this was but the negligence of a fellow-servant; that there never had been any trouble in the operation of the fan or machinery; that the accident was not anticipated, and could not be reasonably anticipated; that the fan and machinery had been regularly and frequently inspected and that they were always found to be in good running order; that the bearings had never heated or become loose; that the fan was taken apart on the next work day after the accident and found to be in perfect condition, the oil wells supplied with oil, the bearings thoroughly lubricated and in good order, and that they have been operated ever since without repairs or alterations; that the hood or covering of the fan is so tight, and the box of the journal in which the axle of the fan works so closely fitting that it was impossible for fire to get into the fan from the outside; that the slight fastening of the door was no impediment to the egress of the plaintiff at the time of the accident; that he was on the opposite side of the room, kneeling down with his face and eyes covered with cotton, and that his injury was suffered before he got to the door, and was in no way attributable to the fastening of the door; that the plaintiff had no difficulty in getting out; that the door opened immediately when he pushed against it; that it was not negligence in any view of the case for the defendant to bolt the door, because the plaintiff himself proved that it was the rule and custom for the men who were working just outside of the door to open it whenever notified by the inside worker; that this was the safer method; and if they failed, it was the negligence of fellow-servants; that the plaintiff knew all the conditions and all the dangers, if any, to which he was exposed; that he knew just as well as the defendant the danger from an accidental fire, without being warned, and that he voluntarily assumed the risk attending his employment.
We have been aided very much in the examination of this case by the full statement of facts contained in the briefs of the appellant and the appellee. Rule 34 requires the appellant to make such statement in his brief, and its observance in all cases would do much to quiet the complaint sometimes heard that some fact has been overlooked.
The exceptions are numerous, but it is unnecessary to discuss each one of them, as many involve the same question. The exception to the question asked the jurors, "Is there any member of the jury who has an *Page 380 
interest as agent, or otherwise in the Maryland Casualty Company, an insurance company?" is without merit. We must assume the question was asked in good faith, and the defendant says in its brief: "The Maryland Casualty Company had insured the defendant in respect to the plaintiff's accident."
In Blevins v. Cotton Mills, 150 N.C. 497, it was held that an employee of the defendant was incompetent as a juror, and the Casualty Company was practically a defendant. In any event, it does not appear that the question prejudiced the cause of the defendant. No person was excused on account of his connection with the Casualty Company, and the defendant did not exhaust its challenges.
The evidence of the absence of the oil cups after the injury would ordinarily be incompetent, but it was made competent in this case by the evidence of the defendant that the machinery had not been changed, and that the oil cups were on the machinery at the time of the injury and at the trial. Tise v. Thomasville, 151 N.C. 282.
The defendant resisted a recovery principally on the following grounds:
(1) That the fact that the door was fastened on the outside was not the proximate cause of the injury, contending, on the plaintiff's (481) evidence, that he had no difficulty in getting out, and was not delayed by the manner of fastening the door.
(2) That if the room in which the plaintiff was working was unsafe, this was not the cause of his injury, and that the real cause was an accidental fire.
(3) That if the fire was the result of negligence, it was the negligence of a fellow-servant, for which the defendant would not be liable.
(4) That if plaintiff was delayed in leaving the room, it was because of the negligence of a fellow-servant in failing to open the door when he called.
(5) That the fire was accidental.
(6) That the plaintiff assumed the risk.
(7) That there was no evidence of negligence.
All of these contentions, except the last, are dependent upon the findings of the jury, and we think his Honor submitted them to the jury under instructions of which the defendant can not complain.
After stating the duties imposed upon the plaintiff and defendant, he explained the meaning of the term "accident," and instructed the jury that the plaintiff could not recover if his injuries were the result of an accident; that the doctrine of res ipsa loquitur did not apply and that the burden was on the plaintiff to prove that the defendant was negligent and that this negligence was the proximate cause of his injury; that proof of an accident was not proof of negligence; that if the fire was *Page 381 
caused by the negligence of a fellow-servant in failing to lubricate the machinery, the plaintiff could not recover; that if the fan was of approved make and such as was in general use, and was frequently inspected by the defendant and no defect was discovered or could be discovered by a reasonably careful inspection, and that the defendant did not know of any defect in the fan, and that the fire originated in the fan from an unknown cause or through the negligence of a fellow-servant, there would be no actionable negligence; that the defendant would not be responsible for failure to discover a latent defect in the fan; that there was no evidence that the defendant was negligent in the preparation of the cotton and the feeding it into the pipes for delivery through the (482) fan into the storeroom; that if the fan and the apparatus for delivering cotton in the storage-room were of standard make, known and approved and in general use, the defendant was not negligent in respect to furnishing said fan and apparatus, although there was a fan of later and more improved make which was frequently used; that if such fans occasionally got hot from rapid revolutions, but not hot enough to ignite cotton, it was not negligence to continue the use; that if fans like the one used by the defendant usually vibrate and make noises as described by the plaintiff, but perform their functions safely, this would not be evidence of a defective fan; that if the door of the storage-room was fastened, but the fastening did not impede or prevent the plaintiff from emerging from the room, the fastening of the door would not render the defendant liable; that the defendant was not required to provide against a possible accident which would not be expected or foreseen by a reasonably prudent man; that it was as much the duty of the plaintiff as of the defendant to anticipate an accidental fire; that if the fan had been operated ten years without getting out of order or accident, and had been operated without repairs and no accident since the injury to the plaintiff, this would be evidence that the defendant had no notice of a defect in the fan, if it existed, and that the fan was not defective; that if plaintiff knew of the conditions, the defendant was not required to warn him; that if defendant failed to provide the plaintiff a safe place to work and the plaintiff had equal knowledge with the defendant, or the same opportunity of discovering the dangerous position or liability to risk he would occupy in his employment, the plaintiff assumed the risk as to the place where he was working.
We also think there was evidence of negligence to be submitted to the jury.
The brief of the appellee, from which we quote, states with accuracy the duties imposed upon the employer.
"It is universally held at this day that it is the master's duty (483) to furnish the servant reasonably safe machinery. If he fails *Page 382 
to do so he exposes the servant to extraordinary risks and hazards. The failure to exercise due care in furnishing such machinery is a breach of duty which the master owes the servant." Moore v. R. R., 141 N.C. 113.
"It is accepted law in North Carolina that an employer of labor to assist in the operation of railways, mills, and other plants where the machinery is more or less complicated, and more especially when drawn by mechanical power, is required to provide for his employees, in the exercise of proper care, a reasonably safe place to work, and to supply them with machinery, implements, and appliances reasonably safe and suitable for the work in which they are engaged, and such as are approved and in general use in plants and places of like kind and character; and an employer is also required to keep such machinery in such condition, as far as this can be done in the exercise of proper care and diligence." Hicks v. Mfg. Co.,138 N.C. 325-326.
"Where there is evidence tending to show that an injured employee did not have a reasonably safe place to work, or was not instructed as to the danger attending the act he was told to do, the question whether it was a reasonably safe place to work or whether the failure to warn him of the danger was the proximate cause of the injury should be submitted to a jury. The evidence that there was a safe way to do this act did not warrant the withdrawal of the case from the jury in view of the evidence in the case. When more than one inference can be drawn as to the negligence or proximate cause, it is for the jury to determine. Dorsett v. Mfg. Co., 131 N.C. 254;Marks v. Cotton Mills, 138 N.C. 401." Holton v. Lumber Co., 152 N.C. 69.
"It is the negligence of the employer in not providing for his employees safe machinery and a reasonably safe place in which to work that renders him liable for any resulting injury to them, and this negligence consists in his failure to adopt and use the approved appliances which are in general use and necessary to the safety of the employees in the performance of their duties; and this rule applies, it is (484) said, even as between carrier and passenger." Marks v. Cotton Mills, 135 N.C. 290.
"A master owes to a servant the duty to carefully inspect, at reasonable intervals, the machinery, ways, and appliances provided for the use of the servant in the performance of his work, and it is not essential to his liability for an injury to the servant that he should actually know of the defect causing the injury." West v. Tanning Co., ante, 44 (69 S.E. 687);Womble v. Grocery Co., 135 N.C. 486.
"Generally speaking, an employer is bound to warn and instruct his employee concerning dangers known to him, or which he should know in the exercise of reasonable care for their safety, and which are unknown *Page 383 
to them, or are undiscoverable by them in the exercise of such ordinary and reasonable care as in their situation they may be expected and required to take for their own safety, or concerning such dangers as are not probably appreciated by them, by reason of their lack of experience, their youth, or through general incompetency, or ignorance; and unless the servant is so warned or instructed, he does not assume the risk of such dangers; but if he receives an injury without fault on his part, in consequence of not having received a suitable warning or instruction, the master is bound to indemnify him therefor." Thompson on Negligence, sec. 4055.
There was evidence of a failure to perform these duties, and this is negligence. The plaintiff offered evidence that he had been in the employment of the defendant six months and had not known the machinery to be inspected and had not been warned of danger; that the machinery was bolted to 2-inch flooring and that the flooring was unsteady; that another machine used by the defendant was on a concrete floor and did not shake; that when the machinery was installed there were two oil cups fastened to it as a part of it, which oiled it automatically to avoid friction, and that one of these cups was gone and the other broken; that these oil cups, when on the machine, oiled the bearings; that the fire originated at the bearings; that fine lint cotton was on the pipes and machinery; that plaintiff was required to work in a room bolted on the outside, and that the only mode of exit after completing (485) his work was to burrow through two or three feet of cotton to the door and wait until some one from the outside heard him and opened the door.
The charge to the jury was, we think, in some respects more favorable to the defendant than it was entitled to, and particularly as to the doctrine of assumption of risk, as the employee never assumes the risk of an injury caused by the failure of the employer to perform a duty which he can not delegate, and the duty to provide a reasonably safe place to work is one of them. We find
No error.
Cited: Russ v. Harper, 156 N.C. 449; Hamilton v. Lumber Co.,156 N.C. 524; Featherstone v. Cotton Mills, 159 N.C. 431; Pigford v. R. R.,160 N.C. 99; Steeley v. Lumber Co., 165 N.C. 34; Tate v. Mirror Co.,ib., 280; Walters v. Lumber Co., ib., 389, 392; Starr v. Oil Co., ib., 591;Cochran v. Mills Co., 169 N.C. 63; Hopkins v. R. R., 170 N.C. 488;Oliphant v. R. R., 171 N.C. 304; Howard v. Wright, 173 N.C. 341. *Page 384