SAMUEL THOMPSON v. THE STANDARD OIL COMPANY.

(Filed 2 April, 1919.)

1. **Master and Servant—Employer and Employee—Duty of Master—Negligence—Safe Place to Work—Tools and Appliances—Order of Vice Principal.**

In applying the principle requiring an employer, in the exercise of reasonable care, to furnish his employees a safe place to work and suitable tools and appliances therefor, including simple, ordinary tools, wherein the defect and the character of the work required by their use is of a kind to impart serious menace, and of which the employer knew or should have known by ordinary inspection, regard should also be had to circumstances, when they arise, tending to show that the employee acted in an emergency to his injury under the direct order of his superior employee, or the vice principal of his employer, directing the work at the time, with a natural impulse of present obedience.

2. **Same—Evidence—Instructions—Trials.**

In an action against an employer to recover damages for a personal injury alleged to have been caused by its negligence, there was evidence tending to show that the plaintiff, employed for other duties, was directed by defendant's vice principal to "scotch" a car operated by the defendant on a railroad track, at the place it was desired, and when it was rolling down grade with sufficient force to have crushed a plow point that the vice principal had placed to mark the place; that at the time the only implement the plaintiff had was similar in shape to a crow-bar, the end of which he placed upon the track, resulting in the other end striking him on the head causing serious injury: *Held,* sufficient upon which the jury could find that the plaintiff acted in an emergency under the negligent order of the defendant's vice principal, and a request for instruction was properly denied that the jury find the issues of negligence, contributory negligence, and assumption of risk in defendant's favor should they find the facts according to the evidence in the case.

ACTION tried before *Devin, J.,* and a jury, at the September Term, 1918, of ALAMANCE.

The action is to recover damages for injuries caused by the negligence of defendant company, the employer, in supplying plaintiff, an employee, with an improper tool or implement with which to do his work, to wit, placing a car on a railroad track in proper position, and by a negligent order as to the present use of said implement, given by a Mr. Fowler, who was there in personal charge of the work and who stood towards plaintiff and his coemployees in the position of vice principal. On denial of liability and pleas of contributory negligence and assumption of risk, the jury rendered a verdict for plaintiff, assessing substantial damages. Judgment on the verdict for plaintiff, and defendant excepted and appealed.

There was no evidence offered by defendant, and the errors assigned are that, at close of plaintiff's testimony, his Honor failed to instruct the jury as requested that, if they should find the facts to be as testified to by the witnesses, they must answer the issue of negligence and of contributory negligence and assumption of risk for defendant.

*R. C. Strudwick and T. C. Carter for plaintiff.*
*Parker & Long and Jas. H. Pou for defendant.*

Hoke, J. From the admissions in the pleadings and the facts in evidence it appears that in July, 1917, plaintiff and one or two others, coworkers in the employment of the defendant company for the purpose, were engaged in placing a tank car of the company, then on the railroad track, in a proper position in reference to one of its subsidiary tanks, to the end that its contents might be emptied into the stationary tank by means of a hose, etc.; that the work was being done in the presence and under the personal supervision and direction of one J. O. Fowler, also an employee of the company, and who stood towards plaintiff and his coworkers in the position of vice principal; that the tank car being a short distance out of position and down grade, plaintiff and his coemployees were "pinching" it up grade, using for the purpose a pinchbar supplied by said Fowler from the company's tool-house on the premises. This pinch-bar is not described in the record, but it is evidently an implement or a tool made of wood and iron, designed for pushing a car up grade and affording a leverage, in part, by means of a long handle, fitted in some way into the contrivance or annexed as a part of it. It is sometimes spoken of by the witnesses as a crow-bar, and it is evidently similar to some extent though it is, as stated, in some way so constructed as to fit it for the purpose in which it was then being used. Speaking more directly to the occurrence, the plaintiff, testifying in his own behalf, said among other things: "The car was on the side track, south of the main track, and when we got there the car was not at the

right place, and Mr. Fowler said, 'Boys, it has got to be pinched up a little; it is not at the place.' We pinched it up and pinched a little too far ahead, and he applied the brakes and said, 'Boys, this car is a little too far ahead now.' He took a plow point and put in where he wanted the car to come, and he got back on the car to let the brakes off so the car would come down, but the car stood still and he said, 'Boys, get behind there and give it a little start.' I had the pinch-bar, and I went behind and pinched it, and it started to rolling, and I made right back for the front, and I looked up and Fowler was putting the brakes on, and he said 'Scotch it! Scotch it!' And I put the bar under it, and that is all I know. Fowler called, 'Scotch it, scotch it!' and I attempted to scotch it with the pinch-bar. That was all I had to scotch it with. There were brakes on both ends of the car, and Fowler was on front or west end of car. When we commenced to pinch he was on the car at the brakes, and he said, 'Boys, it is a little bit too far ahead now.' Me and Sam and Hoskins were pinching the car, and we pinched it too far east. Fowler put on brakes, and they held the car. The grade there slopes west. He told us to go behind, to the east end of the car, and give it a start. He had released the brake, and we pinched the car, and it began to roll west, and I came around on the south side of car and had pinch-bar in my hand and had gotten about middle way of car when Fowler said, 'Scotch it! Scotch it!' and I put pinch-bar under front end of the car, and that is all I remember."

Other witnesses confirmed this statement, saying also that just before getting on the car to manage the brakes Fowler put a plow point on the track to indicate where it should be stopped, and having directed his helpers to give the car a start, it rolled down the track, crushing the plow point, and he called to plaintiff, who had walked forward with the bar in his hand, "Scotch it, Sam; scotch it!" That plaintiff, in the endeavor to obey his order, put the end of the pinch-bar before one of the wheels when it was knocked up, the end striking plaintiff under the chin and knocking him onto the track and causing him to receive permanent and painful physical injuries. Further, Sam Caine, testifying for plaintiff, said: "Mr. Fowler got on top of car and took off brakes, and it would not start, and he told us to give him a little start. Mr. Fowler had put plow point on track where he wanted car to stop. Me, Sam Thompson, and Hoskins went to east end of car and pinched it and it started to roll west, and we started back to west end of car on south side, and Mr. Fowler said, 'Scotch it,' and I don't know whether he said Sam or not, but Sam Thompson ran with the crow-bar and put it under the wheel, and the crow-bar hit him under the chin, and that knocked him into the middle of the track. I had started to get a stick of wood at the brick kiln, which was not far, when I saw Sam Thompson was

struck. I went back to him and did not get the wood. Thompson was lying in middle of track, and his foot was mashed and his head and tongue cut. When the car rolled on the plow point it mashed it all to pieces. Sam Thompson had crow-bar when Mr. Fowler said 'Sotch it,' and neither of the other two had anything. Mr. Fowler had provided nothing to scotch it with except plow point."

It is the accepted principle in this State that an employer of labor, in the exercise of reasonable care, is required to furnish his employees a safe place to work and provide them with implements, tools, and appliances suitable for the work in which they are engaged. *Kiger v. Scales Co.,* 162 N. C., 133; *Mincey v. Coast Line,* 161 N. C., 467; *Reid v. Rees & Co.,* 155 N. C., 231; *Hicks v. Mfg. Co.,* 138 N. C., 319. And it has been repeatedly held that the position may be recognized in the case of simple, ordinary tools, where the defect "is of a kind importing menace of substantial injury, having due regard to the nature of the work and the manner of doing it, and it is further shown that the employer knew of such defect or should have found it out under the duty of inspection ordinarily incumbent upon him in tools of that kind," etc. *King v. Atlantic Coast Line,* 174 N. C., 39; *Rodgerson v. Hontz, etc.,* 174 N. C., 27; *Wright v. Thompson,* 171 N. C., 88; *Reid v. Rees,* 155 N. C., 231; *Mercer v. R. R.,* 154 N. C., 399. And in this connection there are numerous decisions to the effect that the general directions or present and special orders of a boss or higher employee, one who represents the employer and stands towards the workmen in the position of vice principal, may be considered as a relevant fact when it is one from which in itself or in connection with the attendant circumstances the fact of negligence may be reasonably inferred. *Atkins v. Madry,* 174 N. C., 187; *Howard v. Oil Co.,* 174 N. C., 651; *Howard v. Wright,* 173 N. C., 339; *Wade v. Contracting Co.,* 149 N. C., 177; *Holton v. Lumber Co.,* 152 N. C., 68; *Noble v. Lumber Co.,* 151 N. C., 76; *Allison v. Ry.,* 129 N. C., 336; *Patton v. Ry.,* 96 N. C., 455.

Not only is an employer supposed, as a rule, to control the conditions under which the work is done and to have a more extended and accurate knowledge of such work and the tools and appliances fitted for same, but the order itself given by the employer or his vice principal directing the work and the natural impulse of present obedience on the part of the employee are additional and relevant facts to be considered in passing upon the latter's conduct in reference to the issue. Accordingly, several of the cases just cited are in illustration and support of the position that there is or may be a distinction in weighing the conduct of the employer and employee even when the principal objective facts are open to the observation of both. Thus, in *Patton v. R. R., supra,* defendant was held liable for a negligent order which caused an employee to jump from

a moving car, while the employee, obeying the order, was relieved of responsibility. The ruling apposite was stated as follows: "One, who is injured by jumping from a moving train is generally barred of a recovery by reason of his contributory negligence, but where a servant was ordered by his superior to do so in order to perform a duty for the company, if not appearing to the servant at the time that obedience would certainly cause injury, it was held that there was no such contributory negligence as would prevent a recovery." A similar position is approved in *Noble v. Lumber Co., supra,* and in *Allison v. R. R.* it was held: "When a section master fails to use reasonable care for the protection of persons working under him and one of them is injured, the company is liable for the negligence of the servant"; and further, "When a section master orders a person under him to throw a handcar off the track to prevent a collision with a freight train and the employee is injured in the execution of the act he is not guilty of contributory negligence." True, in several of these cases it is made to appear and weight is given to the fact that the employee in question was inexperienced, but this is not always or necessarily controlling; and, furthermore, in this instance it is not shown that these subordinates were regular employees of the company or that they had been doing work of this kind. On the contrary, it would seem from the record that they were engaged in other work and under another employer and were called in and hired by Fowler, the vice principal, to do this particular job, and it is the natural, certainly the permissible, inference that they were inexperienced in the work they were then doing. And, in reference to the issue as to assumption of risk, the Court, in *Wallace v. Power Co.,* 176 N. C., 561, speaking to the question, said: "In the recent case of *Howard v. Wright,* 173 N. C., 339, the position as it obtains here is stated as follows: 'The defense of assumption of risk is one growing out of the contract of employment and extends only to the ordinary risks naturally and usually incident to the work that the employee has undertaken to perform, and does not include risks and dangers incident to a failure on the part of the employer to perform his own nondelegable duties,' the opinion citing in approval *Yarborough v. Geer,* 171 N. C., 335; *Norris v. Holt-Morgan Mills,* 154 N. C., 474-485; *Pressly v. Yarn Mills,* 138 N. C., 410; *Hicks v. Mfg. Co.,* 138 N. C., 319-327.

"Even in those jurisdictions where a different concept of assumption of risk prevails, as exemplified in the decisions of the Federal courts construing the Employers' Liability Act, it is held that the position does not obtain in cases attributable to the employer's own negligent breach of duty unless the conditions thereby created are of an enduring kind or under circumstances that afford to the injured employees a fair opportunity to know of these conditions and appreciate the risks and

dangers which they present.. *Gila Valley Ry. v. Hall,* 232 U. S., 94; *Jones v. R. R.,* 176 N. C., 260; *King v. R. R.,* 176 N. C., 300.

Under the principles stated and upheld in these and other like authorities there was no error to the defendant's prejudice, certainly, in referring to the jury the questions of negligence, contributory negligence, or assumption of risk. It was admitted on the argument for the defendant that the pinch-bar, the implement supplied by the company, was not fitted for stopping the car and that its use for that purpose threatened injury. The latter fact would seem to stand revealed from the evidence, and the injury having undoubtedly resulted, defendant's liability on the first issue was practically conceded, and on the second and third issues, the facts, showing that the car rolling down grade had already run over and crushed the plow point, which Fowler, the boss, had placed to stop the car at the proper position, presented a case of emergency, and the order of Fowler to plaintiff, standing by in position with the bar in his hand, and nothing else offered or available, "Scotch it, Sam; scotch it!" was one calling for instant obedience and was not unnaturally or unreasonably obeyed with the implement he then had. And these conditions having been presently created and in part influenced by the negligent order of the vice principal, affording to plaintiff no fair and reasonable opportunity to weigh or appreciate the danger attendant upon his act, there seems to be very little if any ground to support the defense either of contributory negligence or assumption of risk.

We find no reversible error in the record, and the judgment for plaintiff is affirmed.

No error.