MRS. MINNIE L. ELLIS, Administratrix of CLARENCE ELLIS, Deceased, v. THE DURHAM HERALD COMPANY, Inc.

(Filed 14 November, 1928.)

**1. Master and Servant—Liability of Master for Injuries to Servant—Methods of Work, Rules, and Orders—Nonsuit.**

Where, under the order of the defendant's vice-principal, its employee went upon the top of the defendant's press to repair an electrically driven machine, and there in a small space near the ceiling, it was probable that he would come in contact with a deadly, uninsulated electric rail, rendered harmless by the order of the vice-principal that the current be turned off, and while working there the vice-principal suddenly ordered the current to be turned on again, and there was circumstantial evidence that the intestate could not have heard such order, and there was evidence that there was a safer method of doing the work: *Held,* defendant's motion as of nonsuit upon the evidence was erroneously granted in the lower court.

**2. Same—Safe Place to Work.**

In the exercise of due care it is the duty of the employer to furnish his employee a reasonably safe place to do the work within the scope of his employment, and the employer is liable in damages for injury proximately caused by his negligent failure to do so, and it is not required that he should have foreseen the particular injury that followed the neglect of this duty.

**3. Trial—Taking Case or Question from Jury—Nonsuit.**

Upon defendant's motion as of nonsuit the evidence is to be taken in the light most favorable to the plaintiff, and he is entitled to every reasonable intendment therefrom, and every reasonable inference in his favor. C. S., 567.

APPEAL by plaintiff from *Bond, J.,* at March Term, 1928, of DURHAM. Reversed.

ELLIS *v.* HERALD COMPANY.

This is a civil action for actionable negligence brought by plaintiff, administratrix of her son, Clarence Ellis, against defendant. The defendant in the conduct of its business had an electric hoist machine which became out of order and needed repair. Clarence Ellis was in the employ of defendant, and at the time of his death was 19 years old. He worked with one Jack Mitchell in the pressroom of the *Durham Herald,* and was killed about 12:30 in the morning of 5 July, 1926. They got a roll of paper on the hoist and carried it around to the press to put it on the press. Something got the matter with the hoist and the wheels got off the track and it would not pull. Jack Mitchell testified, in part: "Mr. Curtis Denning said 'Go up on the press and get the hoist on the track.'" The bottom of the track was from 10 to 12 inches from the ceiling. Electricity was used in operating the hoist. Plaintiff's intestate was ordered to work in the zone near the rails which carried the electric current to operate the hoist, and fell dead when it was turned on by order of defendant's superintendent.

It was in evidence that an examination of the body disclosed that there was a brown spot across his chest. A scar across the chest, looked like a burn, and one underneath his arm. (Witness indicated mark under arm) and testified, "Seemed as if he must have had his arms up this way. It was under here."

Defendant in its answer denied any negligence, and set up the plea of contributory negligence.

At the close of the evidence defendant moved for judgment as in case of nonsuit. The motion was allowed. Plaintiff excepted, assigned error and appealed to the Supreme Court.

The other material evidence will be set forth in the opinion.

*Basil M. Watkins and W. S. Lockhart for plaintiff.*
*Fuller, Reade & Fuller and Brawley & Gantt for defendant.*

CLARKSON, J. Was defendant entitled to have its motion for judgment as in case of nonsuit allowed at the close of plaintiff's evidence? (C. S., 567.) We think not.

The question as to the admissibility of the humane and considerate articles in the local columns and editorial of the *Durham Herald,* we do not think it necessary now to decide.

On motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom. *Robinson v. Ivey,* 193 N. C., at p. 810.

Under the evidence, we think that plaintiff's intestate was in duty bound to obey Curtis Denning. The evidence was to the effect "Curtis

ELLIS *v.* HERALD COMPANY.

Denning was the superintendent, or foreman, in charge of the work in the absence of Mr. Taylor." *Patton v. R. R.,* 96 N. C., 455; *Thompson v. Oil Co.,* 177 N. C., 279; *Davis v. Shipbuilding Co.,* 180 N. C., 74; *Robinson v. Ivey, supra.*

Without obedience on the part of an employee, in the conduct of business, we would have chaos. No business can be run successfully without the employee being obedient to the employer. In the present case Denning was the *alter ego.* It was his order that plaintiff's intestate obeyed.

The evidence discloses that a step-ladder was ordinarily used on previous occasions in fixing the hoist. On the occasion in controversy, under the direction of the foreman, plaintiff's intestate was ordered to "Go up on the press and get the hoist on the track." We will not narrate the evidence in detail to any extent, as the case goes back for a new trial. To operate the electric hoist, the electric current passed through the rails, which were uninsulated, live wires, and deadly when the current was on. To fix the hoist plaintiff's intestate "had to stoop. There wasn't any platform on top of the press. There wasn't any rail around there to stand on or anything. There wasn't any rail around the top of the press. There wasn't anything to stand on, only to be on the frame of the press. I guess the frame is about four or five inches wide. There isn't anything on the ceiling that could be clasped for support." When the current is off there is no danger. While attempting to fix the hoist with his foreman, Mr. Denning, the foreman instructed Jack Mitchell, who was at the switch some forty or fifty feet away, to turn on the current. "I heard him holler just about the time I cut it on. It was only a second before he hollered. After I left the switch I didn't find Ellis across the track. He fell whenever I turned the switch off— he hollered and fell. I cut the current off before he fell. I cut the current off when Denning told me. I did not let the current stay on but just a second or two. As soon as I cut it on I heard him holler to cut it off and I cut it off. I came around and saw Ellis lying under the press down between the paper." ·

It was in evidence that when Denning instructed Mitchell to turn on the current, plaintiff's intestate was up on the press and not as close to Denning as Mitchell. Plaintiff's intestate was on one side of the press and Denning was on the other. This could be considered on the aspect as to whether plaintiff's intestate heard the order of Denning to turn on the current. The evidence of negligence can be direct or circumstantial. We think the evidence sufficient to be submitted to the jury.

It is well settled that an employer is not a guarantor or an insurer of the safety of the place of work or of the machinery and appliances of

the work. But it is the positive duty of the employer, which is primary and nondelegable, in the exercise of ordinary or reasonable care to furnish or provide his employee a reasonably safe and suitable place in which to do his work, and reasonably safe and suitable machinery and appliances. If there is a failure in this respect, and such failure is the proximate cause of any injury to an employee, the employer is liable. *Barnes v. Utility Co.,* 190 N. C., 382; *Holeman v. Shipbuilding Co.,* 192 N. C., 236; *Robinson v. Ivey,* 193 N. C., 805; *Smith v. Ritch, ante,* 72; *Maulden v. Chair Co., ibid.,* 122; *Street v. Coal Co., ibid.,* 178.

In *Pigford v. R. R.,* 160 N. C., at p. 100, it is said: "It is well understood, however, that an employer of labor may be held responsible for directions given or methods established of the kind indicated, by reason of which an employee is injured." *Ogle v. R. R.,* 195 N. C., 795.

In *Jefferson v. Raleigh,* 194 N. C., at p. 482, it is said: "It is not essential that the particular injury could have been foreseen, but that some injury was likely to flow from the method used in performing the work. This principle of liability first announced in *Drum v. Miller,* 135 N. C., 204, flows through the decisions without a break, but with increasing volume. *Hall v. Rhinehart,* 192 N. C., 706." For the reasons given, the judgment below is

Reversed.