HARRY E. COLE v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 10 September, 1930.)

1. **Master and Servant E a—Liability of railroad for injury to employee engaged in interstate commerce is governed by Federal decisions.**

   In an action in our State court by an employee for damages against a railroad company for an injury inflicted on him while engaged in interstate commerce, the defendant's liability is governed by the Federal Employers' Liability Act and the principles of the common law as applied in the Federal courts.

2. **Master and Servant E b—In order to recover under the Federal Employers' Liability Act the plaintiff must establish negligence.**

   In an action by an employee to recover damages from a railroad company under the provisions of the Federal Employers' Liability Act he must show such negligence on the part of the railroad company as would entitle him to go to the jury under the common law, and that such negligence was a proximate cause of the injury, the burden of proof being upon him as a matter of substance and not of procedure.

3. **Same—Employer is under duty to furnish reasonably safe place to work and tools and appliances reasonably safe and suitable therefor.**

   While an employer is not an insurer of the safety of his employee, it is his duty to provide him, in the exercise of due care, a reasonably safe place to work and reasonably safe and suitable tools and appliances with which to do the work, and although the employer is not required to inspect simple tools which do not "import menace of injury," he is under duty, in the exercise of due care, to inspect such tools where the employee does not have the power of selection or the opportunity of inspection.

4. **Same—Evidence of railroad's negligent failure to provide reasonably safe place to work and reasonably safe tools therefor held sufficient.**

   Where in an action by an employee against a railroad company to recover damages for a personal injury under the Federal Employers' Liability Act, there is evidence tending to show that the plaintiff employee was ordered by the defendant company's foreman to repair a locomotive without placing the locomotive over a pit as was usual and customary in such cases, and that the employee was furnished a defective wrench and blade-setter with which to do the work, and that the employee was ignorant of the defect in the blade-setter, and that because of the cramped position in which he was forced to work he could not see such defect, and that the wrench slipped causing the injury in suit: *Held*, the evidence was sufficient to take the case to the jury upon the question of the defendant's actionable negligence.

5. **Same—Where negligence of defendant is dominant and efficient cause of injury he is liable in damages therefor.**

   Although in order for an employee to recover against a railroad company under the Federal Employers' Liability Act, it is necessary that the

plaintiff employee establish the defendant's negligence as the proximate
cause of the injury, whether the act of the employee in placing a piece
of iron pipe over the end of a defective wrench, furnished by the defend-
ant, in order to obtain greater leverage, was an intervening cause is held
a question for the jury under the facts of this case where the employee
used slight force. against the wrench and was forced to work in a cramped
position on account of the defendant's failure to provide a pit ordinarily
used for such repairs.

6. **Same—An employee does not ordinarily assume the risk of the em-
ployer's negligent act.**

An employee assumes the ordinary risks of his employment, but not
such risks as are due to the negligence of the employer until the em-
ployee is aware of the negligent act and the risk arising therefrom, unless
the negligence and the risk are so obvious that a person of ordinary pru-
dence in his position would have observed and appreciated them.

STACY, C. J., dissents.

APPEAL by defendant from Daniels, J., at January Term, 1930, of
WAKE. No error.

This is an action to recover damages for personal injury under the
Federal Employers' Liability Act. It is admitted that at the time of
the injury the defendant was engaged in and the plaintiff was em-
ployed by the defendant in interstate commerce. The plaintiff is a
machinist. On 15 October, 1926, he was ordered by the defendant's
foreman to repair a locomotive engine which was on the defendant's
repair track in Durham. The right link saddle pin had been broken
and the right tumbling shaft had been bent and twisted underneath the
engine. The plaintiff was to make the repairs by going under the
engine, taking down the broken parts, and straightening the tumbling
shaft. He alleged and testified that he requested the defendant to put
the engine over a pit provided for use when such repairs were to be
made, so that the defective parts of the engine would be more accessible
and the shaft arm could be properly heated; that the pit is "always the
place" for such repairs; that his request was refused; that it was neces-
sary to turn the threaded screw in a blade-setter by an eye-wrench
intended to fit the hexagon head of the screw; that the defendant negli-
gently furnished and required the plaintiff's helper to use an eye-
wrench which was defective and a blade-setter, the screw in which was
so worn that the wrench would suddenly lose hold on the head of the
screw; and that while engaged in the performance of his duties in mak-
ing the repairs (the wrench suddenly losing its hold on the screw of the
blade-setter), the plaintiff was violently thrown against a part of the
engine by which he was caused to suffer serious personal injury. The
plaintiff's specific charges of negligence are stated in the ·opinion.

The defendant filed an answer and issues involving the defendant's
negligence, the plaintiff's contributory negligence and assumption of

risk, and damages were submitted to the jury, and all were answered by the jury in favor of the plaintiff. Judgment was given for the plaintiff and the defendant excepted and appealed. There is no exception to the instructions given the jury.

*Clyde A. Douglass, Robt. N. Simms, O. F. Johnson and D. F. Halli-han for plaintiff.*
*Murray Allen for defendant.*

ADAMS, J. When the injury occurred the defendant was engaged, and the plaintiff was employed by the defendant, in interstate commerce. This is admitted. The case must therefore be determined by the Federal Employers' Liability Act and the principles of the common law as applied in the courts of the United States. *Toledo, St. Louis & Western Railroad Co. v. Allen,* 276 U. S., 165, 72 Law Ed., 513. Before this act was passed the liability of employers engaged in interstate commerce for injuries suffered by their employees while engaged in such commerce was governed by the laws of the several states, because Congress, although empowered to regulate the subject, had not acted in reference to it; but the act took possession of the field of liability in such cases and superseded all State laws upon this subject. *Mondou v. N. Y., N. H. & H. R. Co.,* 223 U. S., 1, 56 Law Ed., 327; *Chicago, etc., R. Co. v. Wright,* 239 U. S., 548, 60 Law Ed., 431; *New York C. R. Co. v. Winfield,* 244 U. S., 147, 61 Law Ed., 1045; *Chicago, M. & St. P. R. Co. v. Coogan,* 271 U. S., 472, 70 Law Ed., 1041.

A material part of the act applicable to the first issue provides that "every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars . . . appliances . . . or other equipment." 45 U. S. C. A., sec. 51.

Under this section negligence is the basis of recovery and is an affirmative fact which the plaintiff must establish, the burden of proof being a matter of substance and not of procedure. *New Orleans, etc., R. Co. v. Harris,* 247 U. S., 367, 62 Law Ed., 1167; *Missouri Pac. R. Co. v. Aeby,* 275 U. S., 426, 72 Law Ed., 351; *Chesapeake & Ohio R. Co. v. Stapleton,* 279 U. S., 587, 73 Law Ed., 861. The act creates no rights that did not exist at common law, and the plaintiff must show such negligence as under the common law should be submitted to the jury. *Woods v. Chicago, B. & Q. R. Co.,* 137 N. E., 806; *Saunders v. R. R.,* 167 N. C., 375.

In substance the plaintiff's allegations are that the defendant negligently failed (1) to provide for the plaintiff a reasonably safe place in which to work, (2) to furnish the plaintiff or his helper a reasonably safe eye-wrench and blade-setter, (3) and to inspect these implements; and, further, (4) that the defendant gave the plaintiff a positive command to hasten his work, and (5) that the helper negligently used the tools, permitting the wrench to lose its hold on the screw.

The parties agree that the judge reviewed and explained the evidence and correctly charged the law. The two propositions on which the appellant chiefly relies are these: (1) There is no sufficient evidence of actionable negligence; (2) the plaintiff assumed the risk of injury. A new trial is not requested, because the plaintiff was permitted to express an opinion that if the tools had not been worn the wrench could not have slipped as a result of the force applied, but the rejection of the testimony is urged on the ground of its asserted incompetency. It is argued that the evidence requires a negative answer to the issue of negligence and an affirmative answer, as a matter of law, to the issue involving the assumption of risk.

The fourth and fifth allegations of negligence may be disregarded for the reason that the evidence does not establish a causal relation between either of them and the injury sustained; but we do not concede, as the appellant insists, that this conclusion applies with equal force to the first alleged ground of negligence.

The appellant contends that it was not negligent, in any respect, but if it was, that its negligence was not the proximate cause of the injury.

In furnishing tools for an employee, or a place for his work, an employer is bound to the exercise of due care—the care which the exigencies of the work reasonably demand. He is not required to insure the safety of the appliances or to furnish the latest and best; but he is under a duty to exercise reasonable care and prudence for the safety of the employee in providing him with tools that are reasonably safe and suitable for the work to be done. *Hough v. Texas & P. R. Co.,* 100 U. S., 213, 25 Law Ed., 612; *Gardner v. Michigan Central R. Co.,* 150 U. S., 349, 37 Law Ed., 1107; *Union Pac. R. Co. v. O'Brien,* 161 U. S., 451, 40 Law Ed., 766; *Seaboard Air Line R. Co. v. Horton,* 233 U. S., 492, 58 Law Ed., 1062. While a purchaser of implements and machinery is ordinarily justified in assuming that proper care was taken in the manufacture he is not for that reason relieved in all cases of the duty of inspection. *Northern Pacific R. Co. v. Herbert,* 116 U. S., 642, 29 Law Ed., 755; *Richmond & Danville R. Co. v. Elliott,* 149 U. S., 265, 37 Law Ed., 728. The principle is stated in *Thompson v. Oil Co.,* 177 N. C., 279, as follows: "It is the accepted principle in this State that an employer of labor, in the exercise of reasonable care, is required to

furnish his employees a safe place to work and provide them with implements, tools, and appliances suitable for the work in which they are engaged. *Kiger v. Scales Co.,* 162 N. C., 133; *Mincey v. Coast Line,* 161 N. C., 467; *Reid v. Rees & Co.,* 155 N. C., 231; *Hicks v. Mfg. Co.,* 138 N. C., 319. And it has been repeatedly held that the position may be recognized in the case of simple, ordinary tools, where the defect 'is of a kind importing menace of substantial injury, having due regard to the nature of the work and the manner of doing it, and it is further shown that the employer knew of such defect or should have found it out under the duty of inspection ordinarily incumbent upon him in tools of that kind,' etc. *King v. Atlantic Coast Line,* 174 N. C., 39; *Rogerson v. Hontz, etc.,* 174 N. C., 27; *Wright v. Thompson,* 171 N. C., 88; *Reid v. Rees, supra; Mercer v. R. R.,* 154 N. C., 399."

As a rule an employer is not required to inspect simple tools which do not "import menace of injury," because the employee, having occasion to use them, is in a position to discover their defects. Relaxation of the duty to inspect simple tools presupposes that the employee by using them has had a better opportunity to observe their defects and that his knowledge is equal or superior to that of the employer. *Mercer v. R. R., supra; Wright v. Thompson, supra; Clinard v. Electric Co.,* 192 N. C., 736. But if the employee has no power of selection or opportunity for inspection the rule is not relaxed and the employer is held to the usual requirements to exercise ordinary care to furnish tools that are reasonably safe. In such case there is no equality of knowledge. *Stork v. Cooperage Co.,* 127 Wis., 322; *Rollings v. Levering,* 18 N. Y., 224; *Guthrie v. R. R.,* 11 Lea, 372; *Chicago v. Blivins,* 46 Kan., 370; *Newboer v. R. R.,* 60 Minn., 130; *R. R. v. Amos,* 20 Ind., 378. When a tool becomes defective and the employer has actual or constructive notice of the defect and the employee is ignorant of it the employer as a rule is liable for exposing the employee to a peril of which he had no knowledge. *Fort Smith & W. R. Co. v. Holcombe,* 158 Pac., 633; *Swain v. Chicago, R. I. & P. R. Co.,* 170 N. W., 296, affirmed on rehearing, 174 N. W., 384.

The Federal Act embraces simple as well as complex tools. *Gekas v. Navigation Co.,* 146 Pac., 970.

In reference to his knowledge of the wrench and blade-setter the plaintiff testified as follows: "He (Mordecai, the foreman) and the helper furnished the tools. . . . I did not have anything to do with the selection of the tools. Mr. Mordecai sent the helper to get the blade-setter, and Mordecai handed me the wrench; and the blade-setter and the wrench were handed me while I was under the engine. . . . Right after I was hurt I examined the blade-setter and wrench. The condition of the blade-setter was that it had been used so much until the

head was smaller than the original size. The blade-setter head was six-sided. The only thing wrong with that was it was too small for the wrench that I was using. The wrench was almost a complete circle and worn. It was intended to be six-sided. . . . I did not have any knowledge of the fact that the foreman had furnished me with a wrench that would slip on the blade-setter. I did not know that he had furnished me that kind of a wrench. . . . I knew I would have to have a wrench and blade-setter. . . . I could not tell you how many times I had used that wrench before. It worked well on new nuts. It was part of the machinist tools. We hardly ever used it. It was part of my equipment, open to my use and inspection. I could look at it every time I had an opportunity to use it. I cannot exactly say that I did know the condition of the wrench. I had never paid attention to it. It worked all right on a full nut, but on an old head or bolt it would not. I knew it would work on a new nut. I have seen wrench and blade-setter before, but had not used them together. Had only used wrench on a full-sized nut; it would be used on other hexagon nuts on engine. . . . The blade-setter was part of the tools. I never used it before. . . . It was there as a part of the machinist tools. . . . I was the only machinist there. All machinist tools were there for the use of all of us, not mine any more than anybody else's. . . . When the wrench and blade-setter were handed to me I put the blade-setter on the tumbling shaft arm. I was in a cramped position. I was kinder like this (illustrates), and fastened it on. The boiler is not high enough and I had to stoop. When I stooped about like I said the blade-setter was lower than my eyes. I could not say how much lower. It was about one foot away. With my eyes in about one foot of the blade-setter I placed the wrench on it. At that time the blade-setter and the wrench were within one foot of my eyes. The head of the screw was inside and not in view. The head of the blade-setter was out here like that (illustrates with photograph held on one side). I was within one foot of the blade-setter and I took the wrench and put it over the head of the blade-setter."

The plaintiff knew the condition of the wrench; but the wrench worked satisfactorily on a "full or new nut." The blade-setter was defective; the head of the screw was worn; it was too small for the wrench. The plaintiff had no knowledge of the defect; he had never used the blade-setter or had any occasion to inspect it. He had a right to assume that it was in good condition. When he set it close to the right tumbling shaft arm, "within one foot of his eyes," the head of the screw was not in view. His inability to see it was due to his "cramped position"; he could have seen it if the car had been over the pit. (In this testimony is involved the alleged negligent failure to provide a safe place for the

plaintiff's work.)  He had never made similar repairs under such condi-
tions.  The foreman was there, partly supervising the work.  The plain-
tiff said, "At the time I was hurt I was doing the work like Mr.
Mordecai had ordered me to do it."

Whether the blade-setter is a simple tool in the sense in which the
term is applied to hammers, chisels, spades, and axes, may be doubted;
but if it is, we cannot hold as a conclusion of law that there is no evi-
dence of the defendant's negligence.  There was no error in submitting
the issue to the jury.

Was the plaintiff's injury the proximate result of the defendant's neg-
ligence, or of a supervening, independent instrumentality improvised by
the plaintiff?  It is a contention of the defendant that the alleged negli-
gence cannot consistently be regarded as the proximate cause of the
injury.  On this point the plaintiff's testimony is pertinent: "I took the
wrench and put it over the head of the blade-setter.  I put a piece of one
and a quarter-inch pipe on the end of the wrench handle.  I did not do
that before I pulled.  I pulled on the wrench and had the piece of pipe,
and then I put a steel rod on the end of the pipe, which made about four
feet leverage from the eye of the wrench out to the end, and this is when
it gave way.  I pulled first with the wrench.  Then I put a piece of
pipe on it and pulled.  Finally, I put on another piece in the pipe and
pulled on that; that made the whole instrument about four feet long.
I had my hand on the wrench to keep the pipe from slipping further on
the wrench handle.  My other hand was resting on something, I sup-
pose.  That was when the wrench slipped.  My hand was on the wrench
to keep the pipe from slipping and it was not more than a guide, because
I was in such a cramped position that there was not power or force.
I was not pulling on the wrench.  I fell against the line and it hit me
in the navel.  I was shoving the wrench up what I could.  I should say
I was possibly 12 or 18 inches from that link that I fell against."

On his direct examination the plaintiff had said this: "I had the
blade-setter as close as could get it on the right tumbling shaft arm.
That was the proper position for the blade-setter.  After putting the
wrench on, I put a piece of pipe about 21 inches long and a little steel
jimmy bar on the end of the pipe, and the helper was pulling at the
end of the jimmy bar and I was assisting him as much as I could to
keep the pipe from slipping further and the wrench slipped and pitched
me forward, and I hit the link with my navel.  I was in a cramped posi-
tion and the wrench in my hand, and I hit the link in a cater-cornered
direction."

It is argued that the plaintiff's injury was the result of his own con-
duct in using the tools in a manner not contemplated by the defendant;
but increasing the leverage of the wrench was an act nearly related to

its common use and not essentially beyond the reasonable contemplation of the parties. The appellee insists, as a matter of common knowledge, that workmen habitually lengthen the handles of tools in order to gain greater leverage. The plaintiff testified that owing to his cramped position his pull of the wrench, both before and after the handle was lengthened, was without "power or force." When the helper pulled, the plaintiff merely held the pipe to keep it from slipping on the wrench.

There must be a proximate causal relation between the negligent act and the injury suffered. If an instrumentality entirely independent of and unrelated to the defendant's negligence caused the injury the defendant is not liable. The proximate cause is the dominant, efficient cause, without which the injury would not have occurred. It is insisted that if the handle of the wrench had not been extended the injury would not have resulted, and that this is a necessary deduction from the plaintiff's testimony. It is not a necessary deduction, particularly when viewed in the light of the plaintiff's position and the slight force he applied. Whether it was a reasonable deduction was a matter for the jury, and, under the agreement appearing of record, the question is presumed to have been considered by the jury and determined against the defendant's contention.

The controlling principle is stated in *Atkinson T. & S. R. Co. v. Calhoun,* 213 U. S., 1, 53 Law Ed., 671, as follows: "The law, in its practical administration, in cases of this kind regards only proximate or immediate, and not remote, causes, and, in ascertaining which is proximate and which remote, refuses to indulge in metaphysical niceties. Where, in the sequence of events between the original default and the final mischief an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause. *Louisiana Mut. Ins. Co. v. Tweed,* 7 Wall, 44, 52, 19 Law Ed., 65, 67. This is emphatically true when the intervening cause is the act of some person entirely unrelated to the original actor. Nevertheless, a careless person is liable for all the natural and probable consequences of his misconduct. If the misconduct is of a character which, according to the usual experience of mankind, is calculated to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse him, and the subsequent mischief will be held to be the result of the original misconduct."

The defendant cannot be relieved of responsibility on the ground referred to unless the evidence discloses the intervention of a new cause, independent of, and unrelated to the defendant's wrongful act. *Texas & Pac. R. Co. v. Stewart,* 228 U. S., 357, 57 Law Ed., 875; *Scheffer v. Washington City, etc., R. Co.,* 105 U. S., 249, 26 Law Ed., 1070. "The

PYATT v. R. R.

inquiry must always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury." *Milwaukee, etc., R. Co. v. Kellott,* 94 U. S., 469, 24 Law Ed., 256. An apt illustration of an independent and unrelated cause appears in *Atchison, T. & S. F. R. Co. v. Calhoun, supra.*

We conclude, in the light of the authorities, that the use of the wrench was not disconnected from the primary fault of the defendant and was not an independent cause of the plaintiff's injury.

The last exception relates to the assumption of risk. U. S. C. A., sec. 54. This defense, as applicable to the present case, remains as at common law. *Jacobs v. So. Ry. Co.,* 241 U. S., 229, 60 Law Ed., 970. The plaintiff assumed the ordinary risks of his employment, but not such as were due to the negligence of the defendant until he became aware of the negligent act and the risk arising out of it, unless the negligence and the risk were alike so obvious that a person of ordinary prudence in his situation would have observed and appreciated them. *R. R. v. Horton, supra; Erie R. Co. v. Purucker,* 244 U. S., 320, 61 Law Ed., 1166. We cannot hold as an inference of law that, in the circumstances disclosed by the evidence, the plaintiff had knowledge of any defect in the blade-setter or that the danger and risk of injury were so obvious that he should have appreciated them. We find

No error.

STACY, C. J., dissents.