E. F. AYDLETT v. A. L. PENDLETON et al.

*Lease Contract, construction of—Lease Terminable upon Sale
of Land by Lessor—Sale, what constitutes—Notice—Former
Adjudication.*

1. Where a contract of lease of land made to enable the lessee to erect a
building thereon provided that the lessee and his assigns should
have entire control of such building and that the lease should
continue until the lessors should sell the lot, the latter to give the
lessee and his assigns thirty days' notice after the sale to remove
the building, etc.; and further, that the lease should "be deter-
mined only on the sale of the land and the giving of the thirty
days' notice, as hereinbefore mentioned": *Held*, that the true
intent and effect of such provisions were that the lease should
terminate whenever the lessors should dispose of all their interest
in the land so leased, and that the lessees should have thirty days'
notice of such sale to enter upon the lot and remove the building.

2. Where a lease was, by its terms, terminable upon the sale of the land
by the lessor, and the latter conveyed the land to his wife for life
with remainder over and he and his wife thereafter executed a

AYDLETT *v.* PENDLETON.

mortgage upon the wife's life estate, which was sold under the power of sale contained in the mortgage: *Held* (1), that such conveyances constituted a "sale" of the land and terminated the lease; (2), that the purchaser of the said life estate was the proper person to give to the occupants of the lot notice that the lease was ended and that they should take notice of that fact and conform to the terms of the lease, and the failure of the remaindermen to join such purchaser in giving the notice cannot affect the latter's rights; (3), a notice by such purchaser to the occupants of the lot that he had purchased the lot and that the lease was ended was sufficient, although it did not specifically require the removal of the building.

3. Where a lease by A. and wife of the land of A. provided that it should terminate upon the sale of the land by the lessors and A. conveyed his interest in the land to his wife for life with remainder over, and in a suit by the wife against the lessee for possession upon the ground that the conveyance by the husband terminated the lease it was adjudged that the lease had not been determined, such adjudication could not affect the rights of a subsequent purchaser of the wife's life estate in a suit for possession upon the ground that the sale by both the husband and wife of their interest in the land had terminated the lease.

CIVIL ACTION, tried before *Graves, J.,* at Fall Term, 1893, of PASQUOTANK Superior Court.

From a judgment for the defendant the plaintiff appealed.

The facts sufficiently appear in the opinion of Associate Justice BURWELL.

*Messrs. Grandy & Aydlett,* for plaintiff (appellant).
*Mr. W. J. Griffin,* for appellees.

BURWELL, J.: In this action to recover possession of land the defendant A. L. Pendleton, Jr., alleges in his answer that he holds the premises as assignee of a lease thereof made by A. L. Pendleton, Sr., and his wife, Jane R. Pendleton, in 1878, to one Kramer; and he avers that the plaintiff is the owner of an estate in said land for the life of

Mrs. Jane R. Pendleton, who is now living, but he insists
that, notwithstanding plaintiff's title, he should not be
required to surrender possession to him, for the reason that
the lease mentioned above has not been determined. That
lease was made, as was therein expressed, "for the purpose
of permitting D. S. Kramer to erect a building on said
lot," the rents of which were to be collected by the lessee,
and one-third thereof was to be paid to the lessors, A. L.
Pendleton and wife, Jane R. Pendleton, "for the use and
occupation of said land." This lease contained the further
stipulation, "that the said D. S. Kramer and his assigns
are to have entire control and management of said build-
ing after the same shall have been erected, and remove the
same off the land of said Pendleton and wife after thirty
days' notice in writing from them to do so. A. L. Pendle-
ton and wife further agree with said Kramer and his exec-
utors, administrators and assigns that the lease of said
land shall continue until they sell said lot, and after sale
they agree to give Kramer and his assigns thirty days'
notice to remove said building, and to place the same on
their land adjoining said lot, provided they own the same
at the time, upon the same terms and conditions as are
provided in this lease. It is further agreed by the parties
to this instrument that the lease shall be determined only
on the sale of the land and the giving of thirty days'
notice, as hereinafter mentioned, and the said Pendleton
and wife shall have a lien on said building for one-third of
the rent actually received and not paid to them or their
assigns. It is further agreed between the parties that the
one-third rent for said building so received shall be paid to
Pendleton and wife within five days after the receipt of
the same."

We construe these provisions to mean that the term of
this lease was to end whenever the lessors, A. L. Pendleton

and his wife, Jane R. Pendleton, should dispose of all their interest in the land so leased. It was to continue in force, they stipulated, until they sold the lot, but they agreed that after its determination by that act of theirs the lessees should be allowed to remove the building to be erected by them at any time within thirty days after notice. The expression, "that the lease shall be determined only on the sale of the land and the giving of thirty days' notice," must be considered in connection with what precedes it. The act of selling the lot when consummated by the lessors, the parties agreed, should work a determination of the relation of landlord and tenant created by the contract, but the lessees had the right, as we have said, within the period prescribed to enter upon the premises to remove the building put thereon by them under the terms of the lease.

We come, therefore, to the inquiry, Had the lessors sold the lot before this action was begun? The defendants in their answer make the following allegation: "On or about the first day of March, 1883, the said A. L. Pendleton, Sr., executed a deed for the land in question in this suit, wherein he conveyed an estate to the same to his wife, the said Jane R. Pendleton, for her life, with the remainder as follows: One-third thereof in fee to one Robert Williams; one-third thereof for life to one George Pendleton, and the remaining third to one Kate Pendleton for life, with contingent remainders over." And upon the trial the plaintiff introduced in evidence the deed referred to, and thus fully established the fact that A. L. Pendleton, Sr., one of the lessors, parted with all his interest in the premises at the date of that deed.

The defendants in their answer also allege, as we have said, that the plaintiff holds the life estate of Mrs. Jane R. Pendleton, which she acquired under the aforesaid deed of her husband, to whom it appears the land belonged at the

date of the lease to Kramer; and upon the trial the plaintiff established his ownership of that life estate by proving that the tenant for life had conveyed her estate in the premises to a trustee with power of sale, which power had been lawfully exercised, and at the sale so made he had purchased, and the estate of Jane R. Pendleton had been conveyed to him.

Having thus shown that both A. L. Pendleton, Sr., and Jane R. Pendleton had sold the land and no longer had any claim thereto or interest therein, the plaintiff had thereby established that the term of the lease had been determined, for, as we construe the contract, the lease was to terminate whenever such sale was consummated.

We think that the plaintiff, who had thus become the owner of the estate for the life of Jane R. Pendleton, was the proper person to give to the occupants of the lot, the assignees of the original lessee, notice that the lease was ended and that they must take notice of that fact and conform to the terms of the agreement under which they held the premises. He was entitled to the possession of his property—the lot. The defendant had the right at any time within the prescribed period to remove *his* property—the building. In this there was nothing that concerned any right of the remaindermen, and their failure or refusal to join the tenant for life in the giving of the notice cannot affect his rights. He acquired the property, not subject to the provisions of the lease, but fully relieved of them. The plaintiff upon the trial showed that on April 22, 1892, he gave the defendants notice that he had purchased the premises and that the lease was ended, and that the date of his purchase was February 20, 1892. This suit was begun on July 6, 1892. Hence, if we concede that the lease was not to be determined until thirty days after notice of the sale by the lessors, there would still have been a

determination of the lease before the beginning of the action. The notice was sufficient. It did not, it is true, specially require the removal of the building. It did distinctly notify them that the plaintiff insisted upon his right to take possession of his land. This was ample notification, we think, that they should remove from the land the fixtures that, under the terms of the lease, they had the right to take away. To hold otherwise would be to stick in the bark.

From what has been said it follows that his Honor erred when he told the jury that "the lease had not been determined." We think that the allegations of the answer and the evidence introduced by the plaintiff and not controverted abundantly established the fact that it had been determined.

We deem it unnecessary to consider the exceptions taken by the plaintiff to evidence introduced by defendants to show that A. L. Pendleton, Jr., one of the defendants, was the assignee of the lessee Kramer. As the case is presented here, it seems to us that the fact that the defendant A. L. Pendleton, Jr. (whose tenant the other defendant was), claimed the land in controversy as assignee of the lease to Kramer was insisted upon by both plaintiff and defendants. Hence, it seems to have been a work of supererogation to prove it, and entirely unnecessary to examine the evidence by which it was sought to establish what each party insisted was true.

The answer contained the following allegation : " In the year 1884 the said Jane R. Pendleton, believing that the sale to her had worked a termination of the lease, instituted a suit against the parties in possession, one T. B. Wilson and one R. W. Berry, for recovery of possession, and the said suit coming on for trial at Fall Term, 1884, the following judgment was made: 'This action having been brought

for the possession of a certain tract of land situated in the town of Elizabeth City, bounded as follows, viz., situated on the corner of Main and Water streets, sixteen feet wide on Water street and thirty-nine feet on Main street, it is ordered and adjudged that the defendants have not forfeited the lease in this cause pleaded, and that they are still entitled to the possession under said lease, and that defendants recover costs.' "

Assuming that this judgment was rendered as alleged, it does not in any view, we think, affect the plaintiff's right. It was then properly adjudged, perhaps, that the lease had not been determined, for Mrs. Jane R. Pendleton had not then sold her interest in the leased premises. Since the rendition of that judgment she has done so, and upon that sale the plaintiff founds his right.

New Trial.