## C. F. BROWN v. J. S. SCOFIELDS SONS COMPANY.

(Filed 12 September, 1917.)

1. **Master and Servant—Safe Place to Work—Nonsuit—Evidence—Negligence—Proximate Cause—Trials.**

   When the evidence tends only to show that a coemployee of the plaintiff had a pair of pliers in his pocket a few minutes before it fell upon and injured the latter at work at the foot of an iron water tank 100 feet high, at the top of which the former was painting; that the master had not furnished the coemployee a safety belt, with nothing to show that such were in common use for this kind of work, it is held that the negligence, if any, was that of a fellow-servant upon which no recovery could be had; and that were such belts required, there was nothing to show that the omission to furnish one on this occasion was the proximate cause of the injury received, and defendant's motion to nonsuit was properly granted.

2. **Master and Servant—Negligence—Safe Place to Work—Changing Conditions—Evidence.**

   Where the evidence tends only to show that plaintiff, at work near the bottom of an iron water tank, was struck and injured by a pair of pliers falling from a coemployee at work painting the tank near the top, the rule requiring the master to furnish the servant a safe place to work has no application, the situation being one of changing conditions and relative positions known as well to the servant as to the master, and with which the latter is not required to keep informed.

CIVIL ACTION tried before *Daniels, J.*, at January Term, 1917, of PERQUIMANS, upon these issues:

1. Was plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: "Yes."

2. Did plaintiff contribute by his own negligence to his injury, as alleged in the answer? Answer: "No."

3. Did the plaintiff assume the risks and dangers of injury in his employment? Answer: "No."

4. What damages, if any, is plaintiff entitled to recover of defendant? Answer: "$7,500."

From the judgment rendered defendant appealed.

*Ward & Thompson, P. W. McMullan for plaintiff.*
*Rountree & Davis, Pruden & Pruden for defendant.*

BROWN, J. The defendant introduced no evidence. The facts established by that introduced by plaintiff are few and simple.

The defendant, as subcontractor for MacCreary & Co., was engaged in erecting a large water tower and tank 100 feet in height at Hertford, N. C. Defendant's foreman, Stanly, was superintending the work. One Montgomery was directed to paint the tank, which had been finished. He put on a pair of overalls, took his paint brush, bucket of paint, and

a pair of pliers and went upon the tank to paint it. There was a swinging seat from the top of the tank on which Montgomery had to sit in order to do the painting, which seat could be moved up and down and horizontally. The evidence does not disclose what Montgomery was doing with the pliers, when they fell or why they fell, but it does disclose the fact that they had been in the possession of Montgomery, and one of the witnesses said that he saw them in the pockets of his overalls eight minutes before they fell.

There was evidence that Montgomery was also a riveter, and that he sometimes used the pliers for extending his reach by taking hold of the paint brush with them. There is no evidence that he was riveting any bolts; in fact, there were no bolts to rivet. The evidence is that the tank was completed, and that Montgomery was engaged in painting it. While Montgomery was painting the top of the tank, plaintiff, in obedience to Stanly's orders, was engaged in steadying a cable used in hoisting heavy material, and while at such work was standing near the posts supporting the tank and under where Montgomery was painting. The pliers fell and struck plaintiff on the head and seriously injured him.

The alleged grounds of negligence consist: (1) In the defendant's failure to furnish Montgomery with a safety belt for the purpose of holding the pliers to prevent them falling. (2) In failing to furnish plaintiff a reasonably safe place to do his work.

There is no evidence that safety belts, or other similar appliances, were in common use for such work as house or tank painting, or were ever supplied to painters by employers for such purpose. The evidence of plaintiff's witness Holbrook proves that Montgomery was not engaged in riveting; that he could not rivet unless an assistant was on inside of tank, and that there was none, and, further, that there was no riveting to be done, as the tank was completed. He further states that safety belts were used by linemen engaged in work on wires.

There is no evidence that Stanly directed Montgomery to take the pliers with him, or that he knew that he did take them. There is evidence that Montgomery had the pliers in the pocket of his overalls, but there is no evidence that they fell out of his pocket, except that a witness saw them in Montgomery's pocket eight minutes before they fell. For aught that appears, Montgomery may have dropped them when taking them out of his pocket or in using them to lengthen his paint brush handle.

In any event, such negligence would be that of a fellow-servant, for which defendant would not be liable.

Assuming, for sake of argument, that it was defendant's duty to furnish a safety belt, there is no evidence that the failure to furnish it

was the proximate cause of the injury. Montgomery may have had the belt buckled around his waist and yet have dropped the pliers while using them in connecting with his brush.

Upon the evidence, no one can account for the falling of the pliers. It was evidently one of those accidental and unavoidable mishaps that has not infrequently occurred in building houses, erecting tanks, and doing similar work, and which no reasonable diligence upon the part of the master could foresee and prevent.

It is contended that defendant failed to furnish plaintiff a safe place to do his work and negligently permitted plaintiff to do his assigned work in a place of obvious danger. While it is the duty of the master to use ordinary care to furnish reasonably safe instrumentalities with which his servants may perform their work, and a reasonably safe place in which they may render their service, this duty has its legal and rational limits.

The master is not required to stand by his servant and watch his every movement in order to protect him from injury. While the duty of construction and provision is his, the duty of operation and protecting himself from negligent use is the servant's.

The rule is correctly stated in *Bedford Co. v. Bough,* 14 L. R. A. (U. S.), 425, as follows:

"It is true that an employer is bound to exercise ordinary care to furnish an employee with a reasonably safe place to work, and to exercise ordinary care to keep it in that condition. The employer, however, is not liable to his employee for the negligence of his coservant in respect to the details of the work, nor is he bound to protect his employee against the mere transitory perils that the execution of the work occasions; nor is he liable merely because a fellow-servant negligently handles appliances in such a way as to occasion injury to an employee." *So. Ind. R. R. v. Harrell,* 161 Ind., 689-698, 700, and cases cited; *Tedford v. Los Angeles,* 54 L. R. A., 106.

In considering this subject the Supreme Court of the United States has said: "The obligation of a master to provide reasonably safe place and structures for his servants to work upon does not oblige him to keep a building, which they are employed in erecting, in a safe condition *at every minute of their work, so far as its safety depends on the performance of that work by them and their fellow-servants."* *Armour v. Habor,* 111 U. S., 313.

Our own Court has substantially declared the same doctrine in numerous cases.

In *Mace v. Mineral Co.,* 169 N. C., 143, it is held that the rule holding the master to accountability in not furnishing his servant a safe place to work "does not apply where the servant, an experienced man

necessarily, from the nature of the work required, in its various stages, to construct the place with reference to his own safety, and his injury proximately results either from his own negligent act in failing to do so or in taking such reasonable and available precaution for his own safety as the dangerous character of his work required."

In that case, *Mr. Justice Walker* says:

"This Court has often held that 'an employer's duty to provide for his employees a reasonably safe place to work does not extend to ordinary conditions arising during the progress of the work when the employee doing his work in his own way can see the dangers and avoid them by the exercise of reasonable care.' *Simpson v. R. R.,* 154 N. C., 51. The rule was well stated in *Covington v. Furniture Co.,* 138 N. C., 374, as follows: 'The general rule of law is that when the danger is obvious and is of such a nature that it can be appreciated and understood by the servant as well as by the master or by any one else, and when the servant has as good an opportunity as the master or any one else of seeing what the danger is and is permitted to do his work in his own way and can avoid the danger by the exercise of reasonable care, the servant cannot recover against the master for the injuries received in consequence of the condition of things which constituted the danger. If the servant is injured it is from his own want of care.' *Warwick v. Ginning Co.,* 153 N. C., 262; *House v. R. R.,* 152 N. C., 397; *Hicks v. Mfg. Co.,* 138 N. C., 319."

In *Mining Co. v. Floyd,* 51 Ohio St., 542, the servant was killed by a fall of a piece of slate from the roof of a mine. In discussing the duty of the master to furnish the servant a safe place to work, the Court says: "Here the place was not furnished as in any sense a permanent place of work, but was a place in which surrounding conditions were constantly changing, and instead of being a place furnished by the master for the employees, within the spirit of the decisions referred to, was a place the furnishing and preparation of which was in itself a part of the work which they were employed to perform." The distinction is shown in a number of cases. *Frazer v. Lumber Co.,* 45 Minn., 235; *McGinty v. Reservoir,* 155 Mass., 183; *Coal Co. v. Schelles,* 42 Ill. App., 619.

The place where plaintiff was standing when hurt was not a *"place"* within the legal signification of that term. It was a condition liable to change at any moment whenever the prosecution of the work required plaintiff to change his position. The defendant's foreman could not possibly be aware of such changing conditions unless he was personally present all the time and exercising that vigilance for plaintiff which the law required him to exercise for himself.

BUNCH *v.* LUMBER CO.

The *"place"* itself was perfectly safe, but the actual situation from which the injury arose was a temporary and changing incident of the performance of the work, and was, in effect, the negligence of a fellow-servant, which could not possibly have been foreseen or provided against by the defendant.

It was plaintiff's duty to exercise .due diligence to protect himself. He knew· that his fellow-servant was working above him, and he had all the knowledge the foreman had. There is no evidence that plaintiff was bound to take his position immediately under Montgomery. As he did so, it was his duty to keep a lookout and protect himself, and not rely on the foreman. He had every opportunity to protect himself that the foreman would have had if he had been standing immediately by him.

If the drastic rule contended for by the plaintiff is held to be good law, it would be almost impossible to construct an ordinary house without constituting the owner or builder an insurer of his employees against those ordinary accidents that are incident to such work.

The motion to nonsuit is allowed.

Reversed.