The complaint succinctly alleges: (a) that A. R. Boswell is next of friend to Freeman Boswell, who is a minor, and authorized to bring the suit; (b) defendant White Hosiery Mills is a corporation engaged in business of manufacturing and dealing in hosiery, and Freeman Boswell was employed by it; (c) that Freeman Boswell was employed by defendant in the hosiery mill engaged in what is known as "topping" or preparing the tops of stockings for the machines, and while passing about his work the bottom of the left leg of his overalls was caught by a rapidly revolving shaft and he was suddenly drawn down, under and around the shafting and was permanently injured. That the injury was caused by defendant's failure to use due or ordinary care to provide Freeman Boswell with a safe place to work; failure to warn him of the *Page 551 
dangers of exposed shafting, he being a youth of tender years and inexperienced in such work. That it operated its mill with the drive-shafting about one foot above the surface of the floor, in the room Boswell worked, exposed and unprotected. It permitted waste material to accumulate around the shafting and likely to catch the clothing of employees, which defendant knew about and permitted to exist. That Boswell was 16 years old when injured. The extent of his injuries are set forth in the demand for damages.
The defendant answering admits that Boswell sustained minor injuries, but denies (a) the injuries were sustained in the course of employment, but were sustained outside the scope of his employment; (b) that Freeman Boswell was engaged in preparing the tops of stockings for the machines in one of the knitting rooms, said machinery being lined one beside the other. The shafting was guarded and protected. That prior to the injury the defendant removed certain of the machines at one end of the line of the machinery away from where Boswell worked for the purpose of replacing same. The place made by the removal caused only a few feet of the shafting to be left exposed. To protect the exposed shafting, defendant's overseer had placed on either side of the shafting two heavy waste cans which completely filled the space. (c) That Boswell, attracted to the window, left his work and instead of proceeding around the end of said line of machinery, deliberately removed the waste cans and stepped over the shafting in motion and went to the window of the mill and returned the same way, and while stepping over the shafting his overalls were caught and in this way he received his injuries. (d) That he was not at his place of work when injured, which was safe and free from danger, but he went for his amusement to another part of the building outside the scope of his employment. That the deliberate act upon the part of said Freeman Boswell in removing said waste cans from the space where part of the machines in said line of machinery had been removed, which theretofore had fully and completely protected any and all employees from any danger by reason of the removal of said machines, as aforesaid, thereby exposing said revolving line of shafting, and there attempting to cross through said opening and over the exposed line of shafting and pulley attached thereto, when at such time the said Freeman Boswell could have proceeded around the east end of said line of machinery about nine feet away and which course any prudent person using due care and reasonable thought and diligence would have taken, constituted negligence on the part of said Freeman Boswell which contributed to and was the sole proximate cause of any and all injuries sustained by the said Freeman Boswell upon said occasion, and defendant does hereby plead said negligence in bar of any claim for damages on account of said *Page 552 
injury. (e) That Freeman Boswell assumed all the ordinary risk incident to the employment and pleads assumption of risk.
Upon the conclusion of the evidence the court below rendered the following judgment: "At the close of plaintiff's evidence having moved for judgment as of nonsuit, and the court being of the opinion that the facts disclosed by the plaintiff's own evidence, and which are not controverted, show such contributory negligence as bars recovery, and the motion for nonsuit should be sustained."
The following map was in evidence.
The plaintiff's evidence substantiated the allegations of the complaint. The evidence of Freeman Boswell, in part, was that he had been working at the hosiery mill three or four months. "At the place I got caught two machines had been taken out, one on each side of the shafting. They had been out for sometime. This left a pretty good space. Since I had been working there had been some cans there, but these had been moved. The space between the machines across the shafting, was just room enough for a pretty good size can to sit, about two feet wide. Tin cans in which waste was kept had been placed where the machines had been taken out. These had been moved for several days when I was hurt. I was hurt about 5 o'clock in the afternoon. There were other persons working in the room with me. Mr. Cleve Garrison was superintendent, he was in the room. No one had ever cautioned me with regard to any danger of that shafting. I had seen other employees of the mill, in that room, crossing over that shafting. They went across there every little bit to get water. The water was at the lower end of the shafting and was brought into the mill through a spigot, for drinking water for the employees. . . . The afternoon I was hurt I had gone from my work to get water and had crossed over the shafting where I was hurt, and came back by the window and looked out at the men working outside. After I came back the same way I had gone and was going back to my work, and when I stepped across the shafting it caught my overalls, it was revolving close to where I got caught, and there were threads wrapped around it, not much of the thread. I guess the shafting was smooth. When I stepped over the shafting it caught my overall leg and I commenced falling. . . . I have explained on this map where I was working and the location of the break on the shafting where I crossed. There was a sewing machine there at the end of the shafting and a table went across the shafting, that is where they sewed up dropped stitches in the socks. The table projected across and came about here, *Page 553 
 [EDITORS' NOTE: THE GRAPH IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 191 N.C. 553.]
on this side. There was room to pass if you went around the table, but in going this way (across the shafting) you did not have to go around the table. I had seen other persons working there cross this shafting, had been seeing this for a right smart while. . . . I do not know who moved those cans. I did not move them. The other lines of *Page 554 
shafting in this mill had machines on them. They were completely protected by the machines. This line where I was hurt was protected by the machines at every point, except where those cans were moved. No one had given me any instructions with regard to observing that shafting as being dangerous." . . . On cross-examination, he testified, in part: "I had not seen the cans there in two or three days. Had been a right smart while since I had seen them. When they were there they completely filled the space and I did not have room to go through there, or anyone else. On the day I was hurt I had left my work and come down the line of machinery towards the school house, and came to where those two machines had been removed, I could have gone just a few steps further and gone around the east end of the line, but I went through that place where the two machines had been removed. When I went through there the line of shafting that was operating the machines was moving and the shafting was revolving pretty fast. . . . I went to get a drink of water and then came back to the window. The water spigot was at the other end of the mill, I was not quite at the end of the mill. It was the only way to get across there. The water spigot was at the end of the line of machinery. When I had come to the end of the line of machinery I would have been at the water spigot. It would have been out of my way to go around to the other end of the mill and get water. There was considerable space between the two lines of machines right in the middle of the mill. I could have gone around that end and come down, but I would have had to go up to the other end of the mill and I was pretty close to the water then. . . . It would have been safer to have gone around this end and stepped over there to the water-cooler than to have gone across the shafting. I was not caught by the line of shafting as I went through the first time, but I was caught as I came back across it. I got my water and went to the window and looked out and turned around and came right back and was caught by my overalls."
Garrison, the superintendent, stopped the revolving shafting when plaintiff was caught and was being revolved over and under the shafting.
Joe Lee Boswell, testified, in part: "The machinery is arranged in two rows with the shafting in the middle, this is the usual way that hosiery mill machinery is installed. Two rows of machines run by one shafting. The shafting that ran these machines is fastened to the floor and has a row of machines on each side of it. These machines guard the shafting and the ends of the shafting are boxed up. A machine had been removed from the row on each side of this particular line of shafting on that side of the building that has been discussed. This left an open passage. . . . I cannot say how long it had been vacant like that, a week or two as well as I remember. During the time that I had *Page 555 
observed these machines away from there I had not seen anything else there to protect the shafting. I guess it was about a week I had observed it like this. I had been going up there once or twice a day and had noticed it open for that period of time. . . . As well as I could tell that space left open was about four feet; I know it was over two feet. I have seen these waste cans that were spoken of; I don't guess they would have completely filled that space."
Clyde Cole, testified, in part: "I was working in the room where he was hurt. I know this opening where the machines were out at this shaft. I don't know how long they had been away, but as near as I can say two or three weeks. I had seen these cans there. They had just been pulled back, it had been a right smart while ago. I had seen people in the mill passing backwards and forwards through that opening over the shafting, I do not know how long they had been doing that, it had been going on for some days, a week or two. I don't know what they had been passing there for, but they had been passing both ways. . . . I worked in the room with Freeman. Mr. Garrison (defendant's superintendent) was in and about the room. I don't know whether or not he saw people when they would pass backward and forward across this shafting. He was in the room when they were doing that."
The only assignment of error is in the court below, under C.S., 567, granting the motion of judgment as in case of nonsuit.
"On a motion to nonsuit, evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom." Southwell v. R. R., ante, 153, and cases cited.
Is there sufficient evidence, as to actionable negligence, to be submitted to the jury? The master is not an insurer. The duty of the master is set forth in Riggs v. Mfg. Co., 190 N.C. p. 258, as follows: "That an employer of labor, in the exercise of reasonable care, must provide for his employees a safe place to do their work and supply them with machinery, implements and appliances safe and suitable for the work in which they are engaged, and to keep such implements, etc., in safe condition as far as this can be done by the exercise of proper care and supervision." The employer failing in this duty renders himself liable to an employee who may sustain injuries as the proximate result of his negligence.
Taking the testimony as true, on the question of nonsuit. Provision was made for the employee to get water from a spigot or water cooler in the corner of the room near the elevator. The machinery was arranged in two rows, the shafting in the middle runs the machines. The machines guard the shafting and the end is boxed up. Two machines had been removed, which left about four feet of the revolving shafting exposed, *Page 556 
cans had been put in the space where the machines had been taken out to protect the revolving shafting exposed, these were removed. Waste thread was on the revolving shafting. The plaintiff was about 16 years of age and was given no instructions that the revolving shafting was dangerous or as to the risk. For a week or two before the injury, the employees in the mill passed forwards and backwards through the opening over the revolving unprotected shafting. Plaintiff knew it would have been safer to have gone around the end to get to the water cooler than to have taken the near cut and stepped over the revolving shafting. At the end of the shafting was a sewing machine and it was some considerable distance around than the short cut. Plaintiff had gone to get water at the place fixed for the employees and crossed the unprotected revolving shafting about a foot or more high from the floor, stepping over it and was returning when his overalls were caught.
In Tisdale v. Tanning Co., 185 N.C. 500, similar in many respects to the present case, it was said: "This Court has repeatedly held that it is negligence for the employer using rapidly revolving shafting to leave the point of the screws, or the taps, exposed, which may thus catch in the clothing of those nearby, exposing employees like the plaintiff's intestate to such danger. In all such cases ordinary prudence requires, as this Court has often held, that the point of the screw and the taps should either be countersunk or protected by a cup or some other similar device which will not catch in the clothing of the employee and drag him to his death. This is such a simple protection that an ordinary regard for the safety of the employees imperatively requires these to be done." Ensley v. Lumber Co.,165 N.C. 696; Holt v. Mfg. Co., 177 N.C. 175-6; Gordon v. Silks Corp.,178 N.C. 470.
In Brooks v. DeSoto Oil Co., 100 Miss., p. 849, 31 Am. Eng. Anno. Cases, note p. 658, it was said: "A number of recent cases support the doctrine that even in the absence of a statutory requirement it is the master's duty to guard shafting, set screws, etc., or at least that the question of the master's negligence in failing to guard such appliances is one for the determination of the jury. Homestake Min. Co. v. Fullerton, 
69 Fed., 923, 36 U.S. App., 32, 16 C.C.A., 545; Rabe v. Consolidated IceCo., 91 Fed., 457; Prattville Cotton Mills Co. v. McKinney (Ala.),59 So. 498; Paducah Box, etc., Co. v. Parker, 143 Ky. 607, 136 S.W. 1012, 43 L.R.A. (N.S.), 179; Dettering v. Levy, 114 Md. 273, 79 A. 476."
In 18 R.C.L., p. 591-2, the principle is well stated: "A question that has often been under judicial consideration is whether an employer owes to his employees any duty to box, fence, or guard the appliances and machinery in the vicinity of which the work is done. The rule formerly was generally recognized, and is supported by some recent *Page 557 
decisions, that the employer is, in the absence of statute, under no obligation to his employees to affix guards to gearing, shafting and other dangerous moving parts of machinery. No doubt the guarding of some appliances is unnecessary and impracticable, the danger being obvious and avoidable by employees; but public policy in respect of such matters has inrecent times undergone a very decided change, and the tendency now is tohold the employer negligent in failing to guard all dangerous appliances;especially is this noticeable in the rulings of the late cases. And, of course, if it can be shown that an injured employee was not informed of or did not appreciate the danger of the unguarded appliance, it is not to be supposed that a recovery will be denied in any jurisdiction." (Italics ours.)
In the Tanning Co. case, supra, it was further said: "If it be conceded that there was a rule of the company forbidding an employee to go over or under the shafting, still the evidence is that such rule had been habitually violated to the knowledge of the employer. In Biles v. R. R.,139 N.C. 528, it is held: `Where a rule is habitually violated to the knowledge of the employer, or where a rule has been violated so frequently and openly and for a length of time that the employer should by the exercise of ordinary care have ascertained its nonobservance, the rule is considered as waived or abrogated.'" Hinnant v. Power Co.,187 N.C. p. 299.
In Roth v. Northern Pacific Lumbering Co., 22 Pac. Rep., 845 (18 Ore., 205), it was said: "But it is to be borne in mind that there is a difference between a knowledge of the facts and a knowledge of the risks which they involve. One may know the facts, and yet not understand the risk; or, as Mr. Justice Byles observed, `A servant knowing the facts may be utterly ignorant of the risks.' Clarke v. Holmes, 7 Hurl. N., 937. For, after all, Mr. Justice Hallett said, `It is not so much a question whether the party injured has knowledge of all the facts in his situation, but whether he is aware of the danger that threatens him. What avails it to him that all the facts are known, if he cannot make the deduction that peril arises from the relation of the facts? The peril may be a fact in itself of which he should be informed.' McGowan v. Mining Co., 3 McCrary, 393, 9 Fed. Rep., 861. So that in a case like the present, where the evidence is conflicting as to whether or not the defendant had knowledge of the risks to which he was exposed, the question is preeminently for the jury."
Defendant cites Dunnevant v. R. R., 167 N.C. 233, where it is said: "If two ways are open to a person to use, one safe and the other dangerous, the choice of the dangerous way, with knowledge of the danger, constitutes contributory negligence. Fulghum v. R. R., 158 N.C. 555; 29 Cyc., 520;Whales v. Gas Light Co., 45 N.E. 363; Johnson v. *Page 558 Wilcox, 19 A. 939. And where a person sui juris knows of a dangerous condition and voluntarily goes into the place of danger, he is guilty of contributory negligence, which will bar his recovery. Royster v. R. R.,supra (147 N.C. 347); Fulghum v. R. R., supra; Saunders v. Smith RealtyCo., 86 Atl., bot. p. 405; Columbus Ry. v. Asbell, 66 S.E. 902; SouthernRy. Co. v. Rowe, 59 S.E. 462; Woodman v. Pitman, 10 Alt., 321." Plaintiff testified that it would have been safer to have gone around the end, but that others went across the revolving, unprotected shafting to get water; no one had cautioned him of the danger or risk. There is no evidence in the record that plaintiff crossed the short cut over the revolving machinery "with knowledge of the danger," or that he knew the risks. Plaintiff and others were permitted to make the short cut a walkway without warning of the danger and risks. If the jury should find that the plaintiff knew the danger and risks he would be guilty of contributory negligence and could not recover; but it was a question for the jury to say whether a boy 16 years of age, under the facts and circumstances, acted as a prudent man.
In S. v. Fulcher, 184 N.C. p. 665, it was said: "The motion we are now considering was made under C.S., 4643, a statute which serves, and was intended to serve, the same purpose in criminal prosecutions as is accomplished by C.S., 567, in civil actions. Originally, under this later section, in cases to which it was applicable, there was considerable doubt as to whether a plea of contributory negligence — the burden of such issue being on the defendant — could be taken advantage of on a motion to nonsuit, but it is now well settled that such may be done when the contributory negligence of the plaintiff is established by his own evidence, as he thus proves himself out of court. Wright v. R. R.,155 N.C. 329; Horne v. R. R., 170 N.C. 660, and cases there cited."
In Moore v. Iron Works, 183 N.C. 438, Stacy, J., said: "Contributory negligence, such as will defeat a recovery in a case like the one at bar, is the negligent act of the plaintiff, which, concurring and cooperating with the negligent act of the defendant, thereby becomes the real, efficient, and proximate cause of the injury, or the cause without which the injury would not have occurred. Negligence is doing other than, or failing to do, what a reasonably prudent man would have done under the same or similar circumstances. In short, it is a want of due care; and there is really no distinction or essential difference between negligence in the plaintiff and negligence in the defendant, except the plaintiff's negligence is called contributory negligence. The same rule of due care, which the defendant is bound to observe, applies equally to the plaintiff; and due care means commensurate care, under the circumstances, when tested by the standard of reasonable prudence and foresight. The law recognizes that contributory negligence may be due either *Page 559 
to acts of omission or to acts of commission. In other words, the lack of diligence, or want of care, on the part of the plaintiff, may consist in doing the wrong thing at the time and place in question, or it may arise from inaction or from doing nothing when something should have been done. The test is: Did the plaintiff fail to exercise that degree of care which an ordinarily prudent man would have exercised or employed, under the same or similar circumstances, and was his failure to do so the proximate cause of his injury? If this be answered in the affirmative, the plaintiff cannot recover in a case like the one at bar."
The plaintiff, a minor 16 years old, was not warned as to the risk or danger of the unprotected revolving shafting. The defendant had arranged a water cooler or spigot in the corner of the mill for the employees for drinking purposes. It was the custom of the employees to take a short cut to the water cooler and step over the revolving shafting, waste had accumulated on the shafting. The plaintiff, instead of going around a safer way some distance further, went the near way to the water cooler and stepped over the revolving shafting, unprotected and about a foot in height from the floor. The superintendent knew, or ought to have known, that this short cut was being used habitually by the employees in the mill. The boy, in returning to his machine from the water cooler, stepped over the uncovered shafting and his overalls caught by the waste on the revolving unprotected shafting, he was carried over and under the revolving shafting until the superintendent stopped the machine. From the testimony of the physician, he was permanently injured. Ordinarily, it is not necessary for a boy of the age of 16 to be warned of the risk and danger incident in coming in contact with dangerous machinery if he knows the risks and appreciates the danger. It was the duty of defendant to use due care to provide a safe place for plaintiff to work, and this included the place to and from the water cooler. The defendant, through its superintendent, had left exposed the revolving shafting and permitted the workers to take a short cut to get water by stepping over the revolving shafting with waste on it, without stopping them or warning them of the risk or danger. The superintendent was in the room, as he stopped the machine. The custom was carried on for some time and he knew, or ought to have known in the exercise of ordinary care, that the employees used the short cut.
Under all the facts and circumstances of this case, we think it a matter for the jury to determine if the defendant was negligent and its negligence was the proximate cause of the injury and if the plaintiff was guilty of contributory negligence, which was the proximate cause of the injury.
For the reasons given, the judgment below is
Reversed. *Page 560