### HAZEL BATSON v. CITY LAUNDRY COMPANY.

(Filed 12 July, 1933.)

1. **Master and Servant C b—Duty of employer to furnish reasonably safe means and appliances includes stairways and platforms.**

An employer must exercise ordinary care to provide employees reasonably safe means and appliances, including stairways and platforms necessary for their use in the performance of their duties, and evidence that steps of a stairway used by employees as a permanent part of their equipment had been allowed to become worn and slick, resulting in injury to an employee when she stepped on a slick place and fell, is held sufficient evidence to be submitted to the jury on the issue of the employer's negligence.

2. **Master and Servant C g—Evidence of employee's contributory negligence held sufficient to bar recovery as a matter of law.**

Evidence that a worker in a laundry was required to bring packages down a stairway in the building, that the number of packages carried at one trip was left exclusively to the employee, and that the employee was familiar with the condition of the stairway, and that she took a double armful of packages at one trip so that she was unable to see the steps immediately in front of her, and that she slipped and fell upon a slick place on a badly worn step *is held* to disclose contributory negligence barring a recovery as a matter of law, an employee being under duty to exercise reasonable care for his own safety.

CIVIL ACTION, before *Devin, J.,* at October Term, 1932, of NEW HANOVER.

The plaintiff was an employee of the defendant and instituted this suit to recover for personal injury sustained on or about 6 June, 1928. The defendant operates a laundry and there is a flight of steps from the first floor to the second floor of the building, consisting of about twenty-seven steps. The stairway is between two walls of the building, that is, the walls come up on each side or end of the steps. A witness for plaintiff said: "You could stand in the center of the steps and touch any side wall." The width of the tread of each step was from ten to twelve inches. The steps were constructed of boards an inch or an inch and a quarter in thickness. Plaintiff alleged and offered evidence tending to show that the edges of the steps were worn as a result of drawing hamper baskets of laundry up and down. The plaintiff detailed the facts and circumstances of her injury as follows: "On the afternoon of 6 June, I was sent up in the laundry room to bring down some packages to be delivered to the office, and in returning I was about midway of the steps, and I stepped in a slick worn place that caused my feet to slip from under me, and I stumbled two or three steps trying to regain my balance, and I saw that I was going head first, and I threw myself

BATSON *v.* LAUNDRY.

back, grabbing at the wall to keep from falling, but there were no guard rails to grab by, and I was hurled on my back down on the steps, and I slid down lacking about two steps from the bottom, and there I was picked up by the bookkeeper and one of the drivers. There were no guard rails, nothing but the plastered wall on both sides, I am not much of a judge of distance, but I imagine the steps are between five and six feet wide. . . . The edges of the steps were worn off round and slick. I was going down kind of on the ball of my foot and it slipped out from under me. . . . I turned my ankle. . . . I put the packages on my arm and put the other over them to keep from losing them. If there had been a guard rail there I don't know which arm I would have used. . . . I carried the packages on my left arm. I said the other arm was on top. It was over them. Putting both arms over it would make a double armful. I guess I did say that I had a double armful. I had the packages in both arms. . . . I did say in order to prevent going several times I brought those many packages. What I meant I could have brought one down at a time and not as many as I did have. . . . I told Judge Barnhill at a former trial that I could not see where I was stepping. I meant I was not looking right down at the step I was stepping on. I could see the steps ahead of me, but was not particularly noticing the one I was stepping on after I left the top. I saw the way was clear. . . . I had never noticed any particular defect in the steps, nothing more than, I reckon, they were worn from going up and down them. I do not remember they were worn particularly by going up and down them. . . . I knew that there were no handrails on the stairs for three years before I was hurt." . . .

There was evidence that after the plaintiff was hurt on 6 June, 1928, that she continued to work at the laundry until 27 February, 1931. In August, after the plaintiff was injured in June, she took an automobile trip to Mississippi and the Gulf of Mexico. The evidence further tended to show that as a result of the fall a spinal trouble developed and on 28 February, 1931, the plaintiff was operated upon, and that she has sustained painful and permanent injury.

At the conclusion of plaintiff's evidence the trial judge sustained a motion of nonsuit, and the plaintiff appealed.

*Herbert McClammy, Burney & McClelland and Rountree, Hackler & Rountree for plaintiff.*

*Bryan & Campbell and L. Clayton Grant for defendant.*

BROGDEN, J. (1) What duty does an employer owe an employee with reference to steps or stairways used by employees in the due and proper discharge of their duties?

(2) Does the evidence warrant a judgment of nonsuit upon the ground of contributory negligence?

The construction and maintenance of steps, stairways and platforms, constituting a part of the permanent ways and appliances furnished by an employer to an employee, require the same degree of care upon the part of such employer; that is to say, that the employer must exercise ordinary care in providing reasonably safe ways and appliances for the use of the employee in discharging the duties imposed by the contract of employment. The testimony liberally interpreted, tends to show that the stairway was constantly used by the plaintiff and other employees as a part of the permanent ways and appliances of the laundry. See the following step cases: *Urquhart v. R. R.*, 156 N. C., 581, 72 S. E., 630; *Bohannon v. Stores Co.*, 197 N. C., 755, 150 S. E., 356; *Farrell v. Thomas and Howard Co.*, 204 N. C., 631. Moreover, there was evidence that the steps were "worn slick and rounded off at the edge. They were worn in the center of the tread, . . . they were worn right much." Plaintiff said: "I stepped in a slick worn place that caused my foot to slip from under me."

The foregoing evidence warranted an inference that the steps under all the circumstances were maintained in a negligent manner.

Notwithstanding, the conduct of the plaintiff must be measured by the same yardstick as that of the defendant. Therefore, the inquiry must shift to her. Did she exercise ordinary care for her own safety?

She knew the condition of the steps, because she had been using them for six years. She said: "I walked up them frequently. Sometimes I did not go more than once a day, and frequently two or three times. I knew there were no guard rails or banisters to the stairway." The evidence further discloses that plaintiff was descending a long flight of stairs with a double armful of packages. She selected the packages according to her own judgment or as she put it: "I guess that I was the judge of the turn. I was not given any instructions about it. They never did tell me how many to bring down. They did not tell me how to come down the. steps." The double armful of packages, which the plaintiff was carrying, made it impossible for her to see the steps as she was descending. While she could see the steps ahead of her she was really placing her feet by guess. A liberal interpretation of plaintiff's testimony leads to the inevitable conclusion that at the time of her injury she was not exercising ordinary care for her own protection, and must, therefore, bear the consequences of her unfortunate injury.

The question of handrails or banisters was discussed in the briefs, but the absence of banisters does not appear to have had anything to do with the injury.

Affirmed.