ELLISON MULDROW v. ALEXANDER WEINSTEIN AND BENJAMIN WEINSTEIN INDIVIDUALLY AND TRADING AS WEINSTEIN HIDE AND METAL COMPANY.

(Filed 12 December, 1951.)

**1. Master and Servant § 14a—**

Where an employer has exempted himself from the Workmen's Compensation Act, the defenses of contributory negligence, assumption of risk and that injury was due to the negligence of a fellow servant are not available to him in an employee's action against him for negligent injury. G.S. 97-14.

**2. Same—**

In common law actions by an employee to recover for personal injury a mere showing that the injury occurred while the employee was in the performance of the duties of his employment is insufficient, but he must show some breach of duty on the part of the employer proximately causing the injury.

**3. Same—**

An employer is not an insurer of the safety of the employee but is required only to exercise the care of an ordinarily prudent man under like circumstances to provide a reasonably safe place to work and reasonably safe implements and appliances.

4. **Same—Evidence held insufficient to be submitted to jury on issue of negligence of employer.**

The evidence tended to show that plaintiff was employed to feed scrap metal into an open pit wherein it was compressed, and that he was injured when a projection on a large piece of scrap caught his glove and caused him to fall into the pit. *Held:* There being no evidence of any defect or unsafe condition in the platform on which plaintiff was required to stand to perform his duties or that the manner of doing the work was not usual and reasonably necessary in the conduct of the business, or that plaintiff was lacking in ordinary strength and intelligence, defendant employer's motion to nonsuit should have been allowed, since the evidence discloses injury by accident which could not have been reasonably foreseen, nor may the failure to provide guard rails under the circumstances nor to warn the employee of the obvious and ordinary conditions be held for negligence.

5. **Same—**

Whether the employer is under duty to provide guard rails depends upon the nature of the work, and an employer is not required to provide guard rails around an opening when the danger is apparent and known and guard rails would interfere materially with the practical use of the premises and there is nothing to show special circumstances rendering the place or the method of work dangerous to an employee possessing average intelligence.

JOHNSON, J., dissenting.

ERVIN and VALENTINE, JJ., concur in dissent.

APPEAL by defendants from *Burgwyn, Special Judge,* April Term, 1951, of WAKE. Reversed.

This is an action to recover damages for personal injury sustained by reason of a fall into a compresser pit on defendants' premises alleged to have been due to the negligence of the defendants.

Plaintiff alleged that he was employed as a laborer by defendants in their junk yard in the City of Raleigh, and that defendants in the conduct of their business had constructed and were using a method of compressing certain scrap metals into compact blocks by means of a metal-lined pit some 6 feet square and 9 feet deep into which the bulky material was thrown and, by electric power and hydraulic pressure exerted on all sides, reduced to convenient size for handling. There was a concrete platform on which the scrap material was placed and from which it was pushed or thrown into the opening for compression. Much of this material consisted of severed parts of automobile bodies. On the afternoon of 14 February, 1949, plaintiff was on this platform engaged in pushing or throwing material into the pit when a projection from the edge of a part of an automobile body he was handling caught his glove and caused him to fall into the pit on his head and sustain injury.

Plaintiff alleged negligence on the part of defendants in that they failed in the exercise of due care to provide him a reasonably safe place in which to do his work, and reasonably safe methods and appliances for this purpose; that defendants failed to provide guard rails or any other protective devices; that the conditions under which he was required to work were of inherently dangerous character, and that defendants failed to give him warning and instructions such as were reasonably required by his inexperience and want of capacity.

On the trial plaintiff testified he was 67 years of age and had been working for defendants three months immediately before he was injured, at a wage of $35 per week; that he was employed to do whatever came to hand; that he had been piling metal on the platform to be fed into the press, when he was told to take the place just vacated by another employee feeding the material into the press. He said the defendants had told him to do anything that had to be done—"no picking and choosing—just keep the press running." He had had no experience with machinery. No one pointed out any dangers that might be involved, but he was told to "keep the tin in there—keep it fed." No one told him how far to stand from the edge of the pit while feeding the metal into it. On the occasion of his injury he was handling part of an automobile body which had been cut off by a blowtorch and as he threw it over into the pit it caught his glove and pulled him in. The press is located in a cinder-block building. There were no guard rails between the platform and the pit. The scrap metal was compressed into blocks, weighing about 500 pounds. If the pieces of scrap metal were heavy they were thrown or pushed in one by one. Plaintiff had worked for the defendants in this yard at other times for a number of years. He testified he was standing on the platform close enough to turn this tin down over into the pit, and that when he threw this piece over it caught his glove. "The piece of metal I was putting in the pit at the time I fell in it . . . was the back of an old car. . . . I was shoving it, had pulled it around until I got it straight to shove over there . . . about the time I was pulling it around it flew up and caught my glove." . . .

Plaintiff's witness Alex Terrell, also a laborer employed by defendants, and who at times fed metal into the pit, testified he had seen plaintiff working at that press doing the same work at other times prior to the day he got hurt. "I would say I'd seen him at least once a day every day previous to his accident working there feeding metal into this pit to the press." He would work at intervals—as much as half a day. He had been working at it half an hour feeding the metal into the pit when he was hurt. The platform was nearly full of tin. Witness heard another employee tell plaintiff to come and throw some tin in while the other man was away, to keep the work going. Plaintiff was standing on the plat-

form just where it would be convenient for him to feed metal down into this pit.

Defendants' motion for judgment of nonsuit was denied. Issues were submitted to the jury and answered in favor of the plaintiff, and from judgment on the verdict defendants appealed.

*W. Brantley Womble and Bickett & Banks for plaintiff, appellee.*
*Ehringhaus & Ehringhaus for defendants, appellants.*

DEVIN, C. J. Though the plaintiff's injury was sustained in the course of his employment by the defendants, employers of more than five persons in the same business, the defendants in the manner prescribed by G.S. 97-4 had exempted themselves from the operation of the Workmen's Compensation Act. Accordingly plaintiff instituted common law action to recover damages for the injury on the ground of negligence. Under these circumstances the defendants were not permitted to defend on the ground that the employee was negligent, that he had assumed the risk of injury, or that the injury was due to negligence of a fellow employee. G.S. 97-14.

Substantially, it was alleged in the complaint that plaintiff's injury was caused by the negligence of the defendants in that they failed to exercise due care to provide him a reasonably safe place to work, and reasonably safe methods and appliances in connection therewith, and omitted to give him warning and instruction reasonably required by his inexperience and want of capacity in performing work of the character in which he was engaged.

There was no evidence that there was any defect in the platform on which the plaintiff was standing and from which he fell to his injury, or that the method of compressing pieces of thin metal into blocks was other than was in approved and general use, or that the manner of pushing or throwing pieces of scrap material into the pit for compression was not such as was usual and reasonably necessary in the conduct of the business. There was no evidence that the concrete platform did not afford a firm foothold or that there was failure to provide proper tools. The plaintiff was familiar with the manner in which this work was being carried on, having been engaged at intervals during the past three months on this platform in putting material into the pit. There was no evidence he was lacking in ordinary strength and intelligence. He was being paid for his labor at the rate of $35 per week. Plaintiff was not brought in contact with any machinery and was doing unskilled work in handling pieces of scrap material in the customary manner. There was no evidence of lack of help as the work the plaintiff was doing was such as was suitable for one man; nor was the injury due to the negligent order of a foreman

(*Thompson v. Oil Co.,* 177 N.C. 279, 98 S.E. 712)*;* nor does it appear that his fall was due to lack of warning or instruction. *Watson v. Construction Co.,* 197 N.C. 586, 150 S.E. 30. There was no evidence that anyone had been injured by falling into the pit during the ten years of its use. No negligence is predicated of the gloves plaintiff used or of the occurrence of a projection on the scrap metal he was handling.

The fact that plaintiff suffered an injury while at work for the defendants would not of itself impose liability therefor. *Fore v. Geary,* 191 N.C. 90 (94), 131 S.E. 387. In order to sustain recovery plaintiff must allege and offer evidence tending to show negligence on the part of his employers, and that such negligence was the proximate cause of his injury. *Newbern v. Great Atlantic & Pacific Tea Co.,* 68 F. 2d 523. It is fundamental that in actions to recover damages for personal injury on the ground of negligence the plaintiff must show a breach of some duty which under the circumstances the defendants owed him, and which proximately caused his injury, and that the act or omission constituting the breach of duty was such that a reasonably prudent man would have foreseen it would likely be productive of injury. One may not be held liable for an injury which he could not in exercise of due care have anticipated. *Watson v. Construction Co.,* 197 N.C. 586 (593), 150 S.E. 30; *Beach v. Patton,* 208 N.C. 134, 179 S.E. 446; *Broadhurst v. Blythe Bros.,* 220 N.C. 464, 17 S.E. 2d 646; *Lee v. Upholstery Co.,* 227 N.C. 88, 40 S.E. 2d 688; *Wood v. Telephone Co.,* 228 N.C. 605, 46 S.E. 2d 717; *McIntyre v. Elevator Co.,* 230 N.C. 539, 54 S.E. 2d 45; *Howard v. Bell,* 232 N.C. 611, 62 S.E. 2d 323. Negligence is gauged by the ability of one to anticipate danger. *McGlone v. Angus,* 248 N.Y. 197. Reasonable apprehension does not include anticipation of every conceivable danger, nor does the duty to exercise care impose obligation to guard against dangers which are remote and improbable. 1 Sherman & Redfield, secs. 24 and 25. A situation not reasonably to be viewed as dangerous does not require safeguards or warning against injuries which in the exercise of due care could not have been foreseen.

It was the duty of the defendants under the allegations and proof in this case, incumbent upon them as employers of the plaintiff, to exercise ordinary care to provide for the plaintiff a reasonably safe place in which to do his work, and reasonably safe implements and appliances with which to work. The defendants were not insurers of the safety of their employee, but were required only to exercise the degree of care which a man of ordinary prudence would have used under like circumstances and charged with like duty. *Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326; *Mintz v. R. R.,* 233 N.C. 607, 65 S.E. 2d 120; *West v. Tanning Co.,* 154 N.C. 44, 69 S.E. 687.

The plaintiff's injury appears to have been due to the accidental catching of some projection from a piece of scrap metal in his glove. In neither the character of the scrap metal nor in the glove furnished by defendants was negligence alleged. *Richardson v. Surety Co.,* 194 N.C. 469, 139 S.E. 839. The place where plaintiff was working was not unsafe. The evidence gives rise to the controlling inference that his injury resulted from an incident in the performance of his work which in the exercise of ordinary care could not reasonably have been anticipated. *Brown v. Scofields Co.,* 174 N.C. 4, 93 S.E. 381. The rule of liability flowing from breach of the duty of an employer, in the exercise of due care, to provide a reasonably safe place for his employee "does not, as a rule, apply to the use of ordinary everyday tools, nor to ordinary everyday conditions, requiring no special care, preparation or prevision; where the defects are readily observable, and where there was no good reason to suppose that the injury complained of would result." *Hoke, J.,* in *House v. R. R.,* 152 N.C. 397, 67 S.E. 981; *Newbern v. Great Atlantic & Pacific Tea Co.,* 68 F. 2d 523. There was no allegation or proof that plaintiff's work or movement was impeded by the scrap metal placed on the platform, or that his fall was caused thereby.

The plaintiff, however, contends that defendants negligently failed to provide him a reasonably safe place to work, in that there were no guard rails or other protective devices to prevent his falling from the platform into the pit. *Batson v. Laundry Co.,* 205 N.C. 93, 170 S.E. 136.

Plaintiff's evidence tended to show that in the ordinary conduct of defendants' business pieces of scrap metal of various sizes, weights and shapes were placed on the platform to be "fed" into the pit for compression. Some of these pieces were as large as half an automobile body, and many were small. Some were pushed in and some were thrown in. In view of the different sizes, shapes and character of the material described and the manner in which the business was being carried on, we find no basis for declaring that due care under the circumstances required the erecting of guard rails which would have rendered to a large degree the method of handling scrap metal in defendants' plant impracticable. The evidence does not warrant the view that a guard rail was required to meet a danger not reasonably to be anticipated. There was no moving machinery to be guarded against such as would invoke the rule applied in *Boswell v. Hosiery Mills,* 191 N.C. 549, 132 S.E. 598. Here was merely an opening six feet long and six feet wide into which the plaintiff pushed or threw scrap metal. A rail along the platform in front of the pit such as plaintiff argued should have been erected, would have required that bulky material be lifted up to be thrown over and into the pit and small pieces cast over. In the absence of any record of a previous accident like that which happened to the plaintiff, the unusual manner of plaintiff's injury

could hardly have been anticipated. The law does not require omniscience.

Whether the failure to provide guard rails is evidence of a breach of the duty to exercise due care depends upon the nature of the work. In the absence of a showing of conditions dangerous to one possessing average intelligence and the ordinary capacity of a laborer, the employer is not required to provide devices which will interfere with the use of the place or the instrumentalities sought to be guarded, or which will make it unsuitable for the work required. 56 C.J.S. 986. Failure to provide a guard rail for a known and visible opening necessary for and continuously used in the employer's business may not be imputed to the employer for negligence where there is no special circumstance which would render the work of throwing scrap metal into the opening peculiarly dangerous. 3 Labatt's Master & Servant 979. The employer is not required to guard instrumentalities in such a way as to materially interfere with their practical use and efficiency. R. R. v. Bell, 149 Va. 720 (726).

Plaintiff cites in support of his position that it was the duty of defendants to provide guard rails, West v. Tanning Co., 154 N.C. 44, 69 S.E. 687; Lynch v. Veneer Co., 169 N.C. 169, 85 S.E. 289, and Beck v. Tanning Co., 179 N.C. 123, 101 S.E. 498. But we think the facts underlying the ruling in those cases are distinguishable from those in the case at bar.

In West v. Tanning Co., supra, the plaintiff's intestate was required to use a narrow walkway near large vats containing boiling water used in extracting tannic acid from chips of wood. This walkway was covered with oil and grease and the covering of the vat had decayed. Plaintiff's intestate slipped on the greased surface of the platform and fell into the vat, and sustained injury from which he died. It was held motion for judgment of nonsuit was properly denied.

In Lynch v. Veneer Co., supra, the plaintiff in that case fell into a large vat used for softening logs for veneering. Until shortly before plaintiff's injury a piece of scantling extending ten or twelve inches above the floor had been placed along the side of the vat, but this had rotted and had not been replaced. Plaintiff was required to peel and drag logs on a narrow platform saturated with water, covered with slick bark and adjoining deep vats filled with boiling water. In handling a log plaintiff slipped on a piece of bark and fell into an uncovered vat. Verdict and judgment for plaintiff were upheld.

In Beck v. Tanning Co., supra, plaintiff fell into a tub which he was filling with chipped wood for boiling in order to extract acid therefrom. There was evidence that obstructions were permitted in the walkways used which caused Beck to stumble and fall into one of the tubs. There was insufficient light and the cover was off the tub. It was held that the evidence warranted submission of the case to the jury.

After a careful examination of the evidence offered by the plaintiff as shown by the record in this case, we are constrained to hold that it is insufficient to warrant submission to the jury on the issue of actionable negligence. The plaintiff's injury was due to an accident for which the defendants cannot be held legally liable. Unfortunately for the plaintiff his employers had exempted themselves from the provisions of the Workmen's Compensation Act, and recovery for plaintiff's injury, which would otherwise have been compensable under that Act, was made to depend upon proof of negligence which plaintiff in this case was unable to furnish.

There was error in denying defendants' motion for judgment of nonsuit, and the judgment must be

Reversed.

JOHNSON, J., dissenting: I have no complaint with the principles of law discussed in the majority opinion, but get a different impression as to the factual implications of the record.

The defendant, Alex Weinstein, referring to the job of feeding the press, testified: "I realized a man of his age couldn't do it. . . . When I hired him I told him that he had no business up to the press house,—that wasn't his duties,—his duties was to keep these roads clean. I never saw him up there, and if I had, I would have discharged him immediately. . . . he stated he was 67 years old . . . and in my opinion he is older than that . . . I certainly wouldn't have put him feeding the press. I realized a man of his age could not do it."

The defendants' witness Ernest Little also testified that he told the plaintiff on one occasion not to stay up on the press platform,—told him "I would go on back and do my job that the man give me, because you might fall into that press."

Yet from time to time the plaintiff was called upon to supply temporarily for persons assigned regularly at feeding the press. This with the knowledge and acquiescence of the foreman, and as the defendant's witness Sanders put it, "it was a matter of common knowledge that Ellison (the plaintiff) did from time to time supply there in feeding the press."

The defendants had rejected the provisions of the Workmen's Compensation Act. This eliminated their common law defenses of assumption of risk and contributory negligence. With these gone, it seems to me there was enough evidence to take the case to the jury on the single issue of actionable negligence.

ERVIN and VALENTINE, JJ., concur in dissent.