CHARLES H. KING v. BYNUM PRINTING COMPANY.

(Filed 9 November, 1932.)

**Master and Servant C b—Evidence held insufficient to show that employer failed to exercise due care to furnish reasonably safe place to work.**

Where the evidence discloses that the plaintiff was employed in the defendant's composing room in a commercial printing company, that there were a number of machines in the room with alleys or walkways between them, and that in the usual method of doing the work there

was a small box on wheels used for the purpose of carrying metal from the machines back to the melting pot, and that the truck or box was moved about the alleys as the progress of the work required, that the plaintiff was an experienced workman and knew of such conditions and that in attempting to cross the room in the performance of his duties he tripped and fell over the movable metal box which was in the walkway, and the plaintiff testifies that he saw the box after he fell over it: *Held*, the evidence is insufficient to establish the contentions of the employee that the room was improperly lighted and that the employer failed to exercise reasonable care to furnish a reasonably safe place to work, it being evident that the employee knew that the movable metal box was shifted about the room as the progress of the work required and that he could have seen it and avoided the injury in the exercise of reasonable care for his own safety.

CIVIL ACTION, before *Devin, J.,* at Fall Term, 1932, of WAKE.

This was a civil action for damages for personal injury sustained on 4 June, 1929. The alleged elements of negligence consisted in the failure to furnish plaintiff a reasonably safe place in which to work, for that a truck was negligently left in a walkway in the printing establishment of defendant, and that the room in which plaintiff was working was poorly lighted. The plaintiff was an experienced workman and had been working for the defendant in the same capacity approximately eighteen months prior to his injury.

Plaintiff's narrative of his injury is as follows:

"I was employed by this company in the capacity of compositor. My duties were to set type and make up book forms and do general run of commercial work. My duties were usually performed in the composing room. The composing room was on the first floor in the rear of the building. The type which was used in connection with my work was in the cases, in the stand, about in the office, by office I mean composing room. I cannot give you the exact dimensions of the composing room, it is approximately fifty feet square. The composing room had in it the following fixtures: Frames for type work where cases were kept in frames, stones for locking up the forms, linotype machines, casting machines and a number of composing machines." Between rows of machines in the room there was an open space about four feet wide, sometimes referred to in the testimony as an alley way or walkway for employees. Continuing the narrative, plaintiff further said: "The end of the path to the composing room was back to the rear near a window and it was about 4:30 in the afternoon and Mr. Carder come to me and asked me how long it would take me on that job, and he said as soon as you finish that job here are a couple of cards for the Carolina Power and Light Company that I want you to set up, and he said this one on

the first case I have got to have the proof by nine o'clock in the morning. That order required moving from where I was to get to other type which was located in another place in the room. The type that had to be used in connection with that job was located on the west side of the building, 25 or 30 feet from where I was. As I finished with this job and took the two cards they told me they wanted and I started with them and I stepped around out of one alley way into another. That was the usual way to go to the place where I started. When I started down this alley looking in the alley way and using every precaution that I could, there was a truck there, box I should say two feet wide and four feet long and similar in color to the floor, I guess it was about eight inches high with rollers on it, small iron rollers. This box was strictly under the supervision of Mr. Carder and it was used for transporting metal to and from the composing room to the machines. It would take the old metal back to the melting room. . . . When I stepped around into the second alley way, that is when I struck my foot against the truck and fell. I could not see this truck until I came in contact with it. At that point the lights in the building were very poor. I did not know the truck was there. When I came in contact with it I fell, struck my foot on it and my composing stick flew out of my hand and I fell to the floor and it knocked a hole in the right side of my ankle, the inner side. . . . I did not report my condition to the foreman at that time . . . but I reported it next morning. . . . I have seen a box there, I suppose it was for the purpose of raking off slugs and rolling them back to be melted. I have seen it filled and rolled out. In this very shop I have seen men kill linotype, place the slugs in a box on wheels for the purpose of rolling it back to the melting pot to be melted over again. Whatever was done about killing the type or linotype slugs and placing them in a box, it stayed there until enough was placed there before it was rolled back, was done right there in the room where I was. . . . I have seen the stone man break the slugs up to be rolled back to be melted again. I could not say how often it was done. I have seen the box there and I suppose it was there for that purpose. I have seen it filled and rolled out. . . . I have taken the chase clear off the form and rolled them off in a truck before carrying them there and dumped them in a box. I have never raked them off in a truck at Bynum Printing Company, but the way I say is the accepted and usual procedure. . . . I should judge I struck the center of my ankle against the truck from the hole it knocked in there. I found out there was a truck there when I fell there. After I fell over it I saw it. I did not see it before. I saw it after I struck it. Naturally I saw it when I looked at it; of course, I was not blind. I could not tell you how many

times I had seen it. I had seen them push them but I did not know whether the man used it that way or whether he pushed it with a stick or how."

The evidence further tended to show that the plaintiff continued his work with the defendant until June, 1930. Plaintiff said: "I brought this suit in July, 1930, after I had been discharged."

Issues of negligence, contributory negligence, assumption of risk and damages were submitted to the jury and answered in favor of plaintiff. Damages were awarded in the sum of $3,500, and from judgment on the verdict the defendant appealed.

*C. A. Douglass and Simms & Simms for plaintiff.*
*John M. Duncan, E. E. Duncan and Murray Allen for defendant.*

BROGDEN, J. The material elements of negligence alleged as constituting a cause of action are: (1) that the composing room was poorly lighted, and (2) that a slug truck was permitted to remain in an open space before rows of machines, which open space or walkway was used by employees in going from one part of the room to another in the performance of their duties.

The testimony of plaintiff clearly discloses that the slug truck was a customary and essential appliance or piece of equipment. It was designed for the purpose of being moved from place to place in the room as the progress of the work required. No defect appeared in its construction, and the plaintiff, an experienced printer, knew that when "men killed a linotype" they "place the slugs in a box on wheels for the purpose of rolling it back to the melting pot to be melted over again. It stayed there until enough was placed there before it was rolled back." Consequently the location of this piece of movable equipment shifted to accommodate the changing conditions of the work. The principle of law applicable to such changing conditions of work was declared and applied in *Brown v. Schofields Sons Company,* 174 N. C., 4, 93 S. E., 381. The Court said: "The place where plaintiff was standing when hurt was not a place within the legal signification of that term. It was a condition liable to change at any moment whenever the prosecution of the work required plaintiff to change his position. The defendant's foreman could not possibly be aware of such changing conditions unless he was personally present all the time and exercising that vigilance for plaintiff which the law required him to exercise for himself." Further quoting from a former decision, the Court said: "This Court has often held that an employer's duty to provide for his employees a reasonably safe place to work does not extend to ordinary conditions arising during

16—203

the progress of the work when the employee doing his work in his own way can see the dangers and avoid them by the exercise of reasonable care."

The principle of liability involved in the case at bar is similar to that announced in *Miller v. Globe Mfg. Co.,* 202 N. C., 254. In that case a workman in the cabinet room of defendant stepped on a "dowel pin" lying on the floor, causing him to fall and break his leg. The plaintiff said: "The reason that I stepped on it was not because the dowel pin was so small I could not see it, I was not looking." The Court, speaking through the *Chief Justice,* said: "Plaintiff's injury seems to have resulted from one of those unfortunate accidents which was not anticipated and could not have been foreseen in the exercise of reasonable prevision on the part of the defendant." See, also, *Owenby v. Power Co.,* 194 N. C., 129, 138 S. E., 529; *Weatherman v. Tobacco Co.,* 198 N. C., 603, 152 S. E., 796; *Goddard v. Southern Desk Co.,* 199 N. C., 22, 150 S. E., 608.

Cases involving injuries to third parties or customers in stores have no application to the present controversy.

The plaintiff was an experienced employee and thoroughly familiar with the methods of work pursued in the composing room. The slug truck was a part of the movable equipment necessary for the proper performance of the work. The plaintiff neither alleged nor testified that the particular space in which the slug truck was parked, was the only walkway or alley way open to his use in performing the duty required by the employer. If a chair or a tool or dowel pin had been left in the walkway in all probability the same result would have been produced.

The plaintiff, however, asserts that the room "was poorly lighted," the injury occurred at 4:30 in the afternoon, and plaintiff said, "After I fell over it I saw it. I did not see it before. I saw it after I struck it. Naturally, I saw it when I looked at it; of course, I was not blind." There is no evidence that there was any change in the light before he fell and afterwards. Manifestly plaintiff, as the evidence discloses, was in a hurry, doubtless attempting to serve his employer the best he could, but the truck was there and the plaintiff could have seen it. It was said by this Court in *Scott v. Telegraph Co.,* 198 N. C., 795, 153 S. E., 413: "The law does not impose on the employer any duty to take better care of his employee than the latter should take of himself."

The Court is of the opinion that the motion for nonsuit should have been allowed.

Reversed.